### In re IRVING–AUSTIN BLDG. CORPORATION.

### IRVING–AUSTIN BLDG. CORPORATION et al. v. CUNNINGHAM et al.

### Nos. 6456, 6571.

Circuit Court of Appeals, Seventh Circuit.

Nov. 3, 1938.

Rehearing Denied Jan. 4, 1939.

576

Charles S. Deneen, Daniel M. Healy, Donald N. Schaffer, and James Percival Pio, all of Chicago, Ill., for appellants.

Lazarus Krinsley and Victor Hedberg, both of Chicago, Ill., for appellee Foreman, Bluford, Krinsley & Schultz.

Henry E. Ayers and Horace A. Young, both of Chicago, Ill., for appellee Ayers.

Edgar B. Elder, of Chicago, Ill., for appellees Cunningham and another.

Seymour M. Lewis and George S. Lavin, pro se, both of Chicago, Ill., for appellees Lewis and others.

Before EVANS, SPARKS, and TREANOR, Circuit Judges.

EVANS, Circuit Judge.

These appeals necessitate the review of allowances made by the District Court to various counsel as compensation for services rendered in the reorganization of the debtor, the Irving-Austin Building Corporation. In disposing of the case, the District Court filed a memorandum wherein he gave his reasons for the awards by him made. At the beginning of his discussion he observed that "this is an unusual and exceptional case." A study of the facts has led us to the same conclu-

sion. To this observation we may add that most every fee case seems somewhat unusual and exceptional, and each must be decided on its own peculiar facts. Pennish v. A. Herz, Inc., et al., 7 Cir., 81 F.2d 511. There is not much room for the play of judicial precedent in attorney's fee cases.

In view of several lengthly dissertations on compensation in reorganization cases appearing in opinions of this court in recent years (In re 211 E. Delaware Place Bldg. Corp., D. C., 13 F.Supp. 473; In re Waugh, 7 Cir., 95 F.2d 451; In re Flamingo Hotel Co., 7 Cir., 81 F.2d 749; In re National Lock Co., 7 Cir., 82 F.2d 600; In re Grocery Center, 7 Cir., 83 F.2d 617; In re Shorewater Corp., 7 Cir., 94 F.2d 261; In re Sheridan-Melrose Bldg. Corp., 7 Cir., 86 F.2d 2; In re 1030 North Dearborn Bldg. Corp., 7 Cir., 86 F.2d 775; In re Central Shorewood Bldg. Corp., 7 Cir., 90 F.2d 725; In re DeLuxe Court Apartment, 7 Cir., 86 F.2d 772; In re Pine Block Bldg. Corp., 7 Cir., 90 F.2d 238; In re Mayfair Bldg. Corp., 7 Cir., 97 F.2d 826, decided July 2, 1938), further extended discussions are hardly excusable.

■ The tendency is strong to approach the question here presented as though this were the fact-finding court of original jurisdiction. It is not. We are but reviewing the action of a District Court whose allowances were made under circumstances more favorable for rational conclusions than we possess.

■■ In passing we feel justified in observing that the practice of allowing references to special masters to determine an issue of alleged fraud (asserted by one creditor) against an officer of the debtor in charge of the building or of submitting to a special master the determination of the amount of compensation which numerous counsel should receive for investigating and trying the said fraud issue, does not commend itself. References should seldom be made, and if at all only when unusual circumstances exist.

■ A fraud issue, ordinarily, is not a proper one for reference to a special master. Perhaps it would be better to say,—issues in fraud hearings are not the proper subject for reference to a special master, save in extraordinary or exceptional cases. And exceptional means the rare—the unusual case or circumstances. The rule is more than an academic pronouncement. It demands application.

We call attention to, and stress, Rule 53 (b) of the rules of the Supreme Court, 28 U.S.C.A. following section 723c, recently adopted, which is but an emphatic reiteration of the law as it before existed:

"(b) Reference. A reference to a master shall be the exception and not the rule."

References to masters are attended by dangerous and unhappy consequences, even when, as here, care is exercised in the selection of the master. These possible results should be avoided.

■ The evils of delay and added expense are both inherent in references. Moreover, references lead to criticism which may in part be avoided by naming, where that official is not disqualified, and the circumstances, exceptional, the referee in bankruptcy. Inasmuch, however, as the determinative issue referred to the special master (that of fraud by M) is no longer in controversy in this suit, save as allowance of fees in said hearing are in issue, no prejudice is shown.

■ The reference to a special master to determine the amount of fees, while perhaps within the possible permissive scope of a reference, is also to be discouraged. Hearings before the court instead of a master in such matters are time savers and reduce costs and expenses. They lead to greater conservatism on the part of counsel who appear as "value of legal services" experts.

A special master is not familiar with the facts which bear on the value of legal services. The court is. Where half a score of lawyers are all engaged on the same side (or even where they are opposed) and have been for several months, and arguments have been made in court, who as well as the court knows which lawyer carried the laboring oar, who rendered constructive,—who rendered obstructive services, who, in short, did the real work and, finally, who is entitled to substantial compensation? The test of physical presence of counsel and the number of hours actually devoted to "sitting in court" must yield before the better test of meritorious service of which the court is the best judge.

To illustrate: In this case one attorney, Tiedebohl, appearing as an expert witness, testified that he believed claimant Lewis, who was allowed $3000 by the master and $5000 by the court, should receive $12,000 and further stated:

"I think even though there is duplication of services, nevertheless, the attorney should be paid for the services performed."

Counsel for appellees now argue that because such testimony stands uncontradicted it should have been accepted by the court.

What are the facts?

The reorganization of this debtor presented no outstanding problems. Several thousand proceedings have been presented in this same district in the past few years involving quite similar problems. All present business and factual questions.

A promoter, Michalopoulos, who later changed his name to Mitchell, erected a large building with seventeen apartments, one theatre (1500 seating capacity), seven stores, five offices, and one hall, and persuaded the public to finance it. Two mortgages, one for $300,000 and one for $100,000, were placed on the property and the bonds sold. When the lower court undertook its reorganization, $24,000 of taxes were unpaid. The property was worth, conservative estimate $250,000, and on liberal valuation, $350,000.

The opportunity for the rendition of much and varied legal service came through a charge, subsequently made (and found by the master to be unsupported by the testimony) that Mitchell defrauded the creditors in three ways: (a) He rented the theatre in the debtor's building for an inadequate rental to the Patio Company, a corporation, which he organized, owned, and controlled; (b) as custodian of the debtor property under the foreclosure proceedings, he fraudulently managed the property and filed improper accounts; and (c) he used the funds of debtor in his possession to purchase $200,000 of first mortgage bonds at distress prices while he had charge of the property and was supposedly safeguarding the bondholders' interests.

It appears that several firms of attorneys rendered services in an attempt to prove these fraud charges before the special master. It is over their compensation for such services that the instant dispute arises.

Is duplication of services of no significance as testified to by the witness Tiedebohl? May each bondholder employ counsel and may the counsel make a charge of fraud or investigate a charge of fraud made by another and successfully demand compensation, notwithstanding the trustee and his counsel also investigate the same issues under the direction of the court? Appellee and his expert witness answer in the affirmative and add that inasmuch as no witness disputed their testimony, the court must accept it.

■ This view must be rejected. If adopted, it would effectively assign to the attorneys the estate which they were employed to conserve. The court, too, would be powerless. He might have had scores of attorneys rendering services for the estate in his charge without knowing of their assistance. He may have directed the counsel for trustee or receiver to investigate a breach of trust or fraud claim which, upon investigation, is found to be without merit, yet nevertheless he must pay numerous other counsel, the rendition of whose services were both unknown to him and of no value to the estate.

■ The correct rule must be, in determining allowances made pursuant to the provisions of section 77B (c) (9) of the Bankruptcy Act, 11 U.S.C.A. § 207 (c) (9), that counsel can recover nothing unless the estate is benefited by his services, where no employment by the court is authorized. Benefit to the estate, and the amount of the benefit are the criteria by which the value of such services should be measured, where no employment by the court or trustee exists.

■ This conclusion is confirmed by a study of the rulings in the analogous fields of contract law. Liability for debts is traceable to contractual origin. Express or implied promises are prerequisites to debt liabilities. When A contracts with B for the latter's services, a case of express agreement arises. The amount of compensation is fixed by the contract or the law inserts the measure of damages known as quantum meruit. If no contract exists and services are rendered, liability arises only when the results and the benefits of services are accepted by the other party in which case liability arises out of such acceptance of the fruits of the other's labor. In all such cases liability is measured, not by the amount of time and energy expended by the laboring party but by the value of such services to the beneficiary.

■ There may be instances which call for an exception to or a modification of the rule just stated. That is to say, reorganization cases may arise where the claims

existing in favor of the estate of the bankrupt are such that a court must order their investigation and also direct their prosecution before undertaking the adoption of a plan of reorganization. In still other instances the plan of reorganization may depend upon the outcome of litigation involving claims in favor of or against the estate. Whether they are of sufficient magnitude or importance to control or seriously affect a plan of reorganization is a matter for the court to determine. Upon due consideration the court may order the disputed claim litigated or settled or the reorganization to proceed with the right, if there be any, in favor of the debtor, assigned to a new company or the old company as reorganized.

 In cases where litigation is necessary or helpful to reorganization, there may be compensation allowed under section 77B (c) (9), although the benefit to the estate from such litigation is limited solely to the final settlement of disputed questions, without which settlement a satisfactory plan of reorganization would be extremely difficult or quite impossible. Compensation for such legal services must rest in the sound discretion of the District Court.

 Under this general rule it becomes necessary to ascertain whether legal services are repetitious, and if so, it is difficult to see how the estate would be benefited thereby.

 This rule not only protects the estate against overcharging for valueless services, but it enables the court to fairly compensate counsel for beneficial services. The protection of counsel who render valuable, constructive service is quite as important as protecting the estate against overcharges for services which were of no benefit to the estate. And it should be added that courts must recognize of necessity a vast difference between the value of successful legal services which create the fund to be distributed and the value of services which are devoted to an equitable distribution of funds in existence when the reorganization proceedings were begun.

 The preferred procedure to be followed is: (a) The court should first ascertain the maximum amount which may be allowed for the administration of the estate or the reorganization of the debtor. Settlement of this question *first* is essential. For when it is settled the court can order the balance of the estate to be divided among the creditors *immediately* and the dispute between counsel will not delay distribution among creditors.

The second step is to ascertain how much each counsel should receive. Here, the court must measure the value of the services and also ascertain their benefit to the estate.

The court fixed $18,500 as the total compensation to all attorneys in the fraud investigation and the proceedings to hold Mitchell liable therefor. The master found the fraud charges unsupported by the proof.

If this were the entire story, we would unhesitatingly reduce all the allowances by substantial sums. Courts can not find that charges are falsely made and then direct the innocent party to pay $18,500 (and costs of special master) to counsel for parties who made the false charges. But, as the District Court observed—the facts in this case are unusual, and the unusual nature of said facts here becomes important.

The special master found the charges of fraud were not sustained by the proof. Quite inconsistent with this finding was the action of Mitchell who held bonds to the amount of $200,000 which were on a par with the other outstanding bonds aggregating some $75,000 against property worth $250,000 to $300,000. Nevertheless, he took stock in a new company in exchange for his bonds, while the remaining bondholders received a first mortgage lien on all the property. Equally surprising was Mitchell's guaranty of the bonds of the other creditors, which were, under the finding of the master, in no better position than the $200,000 bonds by him held and which he cancelled.

The explanation may lie in the substitution of new counsel who may have advised him that six years of fruitless litigation were sufficient for one case. Or he may have found consolation in the reduced rate of interest on the outstanding bonds.

Because the evidence on the fraud hearing is not before us we are unable to review the master's findings, but the conclusion is almost inescapable that either Mitchell was extremely generous when he surrendered the lien of $200,000 of mortgage bonds by him held and guaranteed the bonds of the other creditors who had

been engaging him in heated and protracted litigation, or he had some anxiety about the outcome of the fraud charges preferred and pending against him. The master's report had not been approved by the court.

Accepting the latter of the two hypotheses as the only rational basis for the large allowances to the attorneys, we find ourselves more sympathetic to the amounts awarded. We are nevertheless still convinced that after allowing for the play of discretion on the part of the District Court and assuming that the master erred in his findings, the allowances were too high.

■ The total amount allowed in the fraud investigation was fixed at $18,500. This was much more than the amount involved, if the charges had been established. Of course, litigants and courts are both justified at times in expending more in litigation than the amount involved. If there be involved a vindication of a principle or an important right, or the exposure of a fraud, or a breach of trust, the cost of the litigation and the amount of the recovery are not the only matters to be considered. But in bankruptcy proceedings there is danger of chasing rainbows, of pursuing collateral issues and following false leads that are productive of much delay, great expense, large fees to trustee and counsel, but nothing for the estate.

In proceedings to reorganize a debtor, many a cause of action may safely be assigned to the new corporation and the excuse for delay to contest such collateral claim thus avoided.

■ Considering the amount in controversy and assuming that the finding of the master upon the merits of the fraud charges is of doubtful soundness, we are convinced that an allowance of more than $10,000 can not be sustained. Or to state it otherwise, an allowance of more than $10,000 would be an abuse of discretion. This does not mean we would have allowed $10,000. We are reviewing a discretionary ruling—not making a finding in a de novo hearing.

To take care of this reduction ($8,500) it becomes necessary to fix allowances in individual cases, above which would constitute an abuse of discretion.

The allowance to Charles A. Cunningham, trustee, is reduced from $3,500 to $1,000. The trustee's attorney's fee is reduced from $6,500 to $4,500. Attorney Seymour M. Lewis' and Lavin & Ruvell's fee is reduced from $5,000 to $2,500, and the fee of Henry E. Ayers is reduced to $2,000. We are also persuaded that the firm of Rathje, Hinckley, Barnard, Kulp & Tucker, the attorneys for the Patio Theater Corporation, the lessee of the theatre in debtor property cannot be allowed more than $1,250. Likewise, the fee to Foreman, Blueford, Krinsley & Schultz is reduced to $2,000.

It is needless to observe that in reaching these figures, we are not discrediting or discounting the value or the amount of services rendered by each of the parties and the counsel who are here asking compensation. The total amount of fees asked and the cost of administration in this case exceed $62,500. This is too heavy a burden for the administration of the estate, which since the crash has been unable to meet its tax charges. One half of the above charges was for services in an attempt to fasten liability on Mitchell for fraud charges, which failed. Had they been successful, a sum less than one-third of fees charged would have been recovered.

■ No error is assigned over the allowance of $8,491 for fees and $1,1· ˙ for expenses to the special master, and this item is therefore not before us for review.

The order of the District Court is modified in the foregoing amounts and as modified is affirmed. Each party will pay its own costs in this court.