**In re Eloise WASHINGTON.**

**Eloise WASHINGTON, Plaintiff,**

**v.**

**GENERAL MOTORS ACCEPTANCE CORP., Defendant.**

**Bankruptcy No. 91–42614 S.
Adv. No. 91–4229.**

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

Jan. 31, 1992.

Andrew Clark, Little Rock, Ark., for plaintiff.

Joseph F. Kolb, Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE came before the Court for trial on the Complaint for Turnover. Andrew Clark appeared for the plaintiff; Joseph F. Kolb appeared on behalf of the defendant General Motors Acceptance Corp. ("GMAC"). Trial began on January 7, 1992, after which the Court made certain factual findings and adjourned the matter to January 15, 1992. On January 15, 1992, the parties submitted additional evidence regarding the remaining issues. This opinion sets forth all findings of fact and conclusions of law.

## I.

### FINDINGS OF FACT

1. Eloise Washington's father, Curtis Washington, purchased a 1990 Buick Skylark from General Motors. Curtis Washington executed a retail installment sale contract under which he is still obligated to pay GMAC for the vehicle.

2. Eloise Washington stated that she filled out an application for credit with GMAC but did not know what happened to the application. She does not recall turning it in to GMAC or its agents.

3. Eloise Washington did not enter into any contract with GMAC.

4. Title to the vehicle is in Curtis Washington's name. The title reflects GMAC's lien.

5. The vehicle was purchased with the intent that it would be Eloise Washington's transportation. That is, Curtis Washington did not merely loan the car to his daughter, but purchased the vehicle for her use. Thus, the arrangement between father and daughter was in the nature of an informal lease or bailment. Eloise Washington made the monthly payments to GMAC and purportedly paid insurance costs. There was clearly subterfuge in the acquisition of credit on the part of the father and the debtor.

6. Eloise Washington has sufficient interest in the vehicle such that her interest

in this vehicle is property of the estate pursuant to 11 U.S.C. § 541(a).

7. On or about September 30, 1991, Curtis Washington signed a Bill of Sale by which he purported to transfer the Buick Skylark to his daughter in consideration of the remainder of what was owed to GMAC. The Bill of Sale further stated that the "[C]ar will remain in my name until debt is satified [sic]."

8. GMAC was never notified of the "sale," nor was the transfer of title recorded at the state department of motor vehicles.

9. The "Bill of Sale" did not effect a valid transfer of Curtis Washington's separate obligation to pay GMAC for the vehicle.

■ 10. On or about December 3, 1991, GMAC repossessed the vehicle.[1]

11. On October 23, 1991, Eloise Washington filed a voluntary Chapter 13 petition in bankruptcy. Ms. Washington is thus a "debtor" within the meaning of 11 U.S.C. § 101(13).

12. Curtis Washington did not file bankruptcy.

13. GMAC is not a "creditor" within the meaning of the bankruptcy code because it does not have a claim against the debtor. In addition, GMAC does not have a claim against the estate of the kinds specified in Bankruptcy Code section 101(10).

14. Ms. Washington is gainfully employed and requires the use of a vehicle to get to and from work.

15. GMAC has received no payments on the vehicle since August 1991.

16. Eloise Washington has not submitted proof that she is currently paying insurance on the vehicle.

17. There is no equity in the vehicle.

18. Eloise Washington has not provided adequate protection to GMAC.

## II.

### CONCLUSIONS OF LAW

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 1334. Moreover, this Court concludes that this is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(1) as exemplified by 28 U.S.C. § 157(b)(2)(E).

The debtor seeks a turnover of the vehicle, apparently pursuant to 11 U.S.C. § 542. GMAC contests the turnover inasmuch as its contract is with a non-debtor, the father of the debtor: it is not a creditor of the debtor such that it should be required to turn over the property. GMAC further argues that no adequate protection has been given to preserve its security interest.

■ As a general rule, in a turnover proceeding, the burden is upon the debtor to show that the item is property of the estate. Before turnover is ordered, the debtor must also demonstrate that the debt exceeds the fair market value of the collateral. Upon this showing, the debtor must also show that she can provide adequate protection. *In re World Communications, Inc.*, 72 B.R. 498 (D.Utah 1987).

■ Section 542 requires anyone holding property of the estate to deliver it to the trustee. In the instant case, the debtor has an interest in the vehicle and this interest is property of the estate within the broad meaning of Bankruptcy Code section 541. Property of a bankruptcy estate includes all interests of a debtor, including possessory interests. *48th Street Steakhouse, Inc. v. Rockefeller Center, Inc. (In re 48th Street Steakhouse, Inc.)*, 61 B.R. 182, 187 (Bankr.S.D.N.Y.1986), *aff'd*, 77 B.R. 409 (S.D.N.Y.), *aff'd*, 835 F.2d 427 (2d Cir.1987). The unrebutted testimony indicated that the agreement between the father and

---

**1.** While the debtor intimates that this action was a wilful violation of the automatic stay, this Court cannot so rule. The person with whom GMAC contracted was Curtis Washington, who is a non-debtor. While a technical violation of the automatic stay may have occurred, GMAC's conduct was by no means wilful where the debtor's interest was acquired by subterfuge with respect to GMAC: GMAC had no knowledge of the Bill of Sale until this Adversary Proceeding was filed. The co-debtor stay is inapplicable because Eloise Washington is not liable on the debt. *See* 11 U.S.C. § 1301(a).

daughter was such that she has some right to possession of the vehicle. The testimony indicated the car was bought for her to use, and that she provided the downpayment and made monthly payments until August 1991. This agreement between the debtor and her father resulted in some form of bailment, and it is this interest that constitutes property of the estate.

The debtor thus has an interest in the property—an equitable interest by virtue of the unrefuted testimony that defendant made the downpayment and the monthly payments for the vehicle. The parties all agree, however, that there is no equity in the vehicle. Under the circumstances, the holder of property of the estate is excused from turnover requirements if the property held is of inconsequential value unless it has significant use value to the estate. Clearly, the testimony established that the debtor needs a vehicle to go to and from work. Whether a secured interest can be adequately protected, if the creditor demands adequate protection, is a condition precedent to an order for turnover. *In re World Communications, Inc.,* 72 B.R. 498 (D.Utah 1987).

Adequate protection[2] is intended to assure the maintenance, and thus recoverability of the lien value in the interim period between the filing of the petition and the acceptance of a plan of reorganization. "[W]hile the concept of adequate protection is complex, its application is intended to be flexible and molded to the needs of an individual case so that the purposes of bankruptcy will be accomplished." *In re*

*All–Way Services, Inc.,* 73 B.R. 556, 565 (Bankr.E.D.Wisc.1987). Each case must be decided on a case by case basis with attention given to the particular facts of the case. H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 339, U.S.Code Cong. & Admin.News 1978, 5787; *In re Johnson,* 90 B.R. 973, 978 (Bankr.D.Minn.1988).

There are a number of factors to be considered in determining whether a secured creditor's interest is adequately protected, such as equity; necessity of property to an effective reorganization; ability to pay interest or give replacement liens or indubitable equivalents; and the debtor's care in keeping property insured and repaired. *Johnson,* 90 B.R. at 979. In the instant case, the debtor has failed to provide adequate protection to GMAC. There is no equity in the vehicle; there is no proof of insurance.[3] Most important, the debtor cannot provide the "indubitable equivalent" because her plan proposes to deprive the creditor of its entire bundle of rights under its contract, including its right to proceed against the original obligor, debtor's father.

Other courts have recognized that "In certain unusual circumstances, a third party may gain protection of the stay as an incidental result of the protection afforded estate property." *48th Street Steakhouse, Inc.,* 61 B.R. at 188. There is a significant distinction to be made in the instant case, however. In the cited case, a contract or other formal relationship existed among the parties such that there were voluntary

---

**2.** Bankruptcy Code section 361 provides as follows:

§ 361. Adequate protection. When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—

(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

(2) providing to such entity an additional or replacement lien to the extent that such

stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

**3.** The debtor submitted a premium notice from an insurance company, but no proof that the bill had been paid. While the notice indicated GMAC's lien, it did not specifically indicate that GMAC was the loss payee.

contractual relationships. Here, GMAC has not contracted with the debtor. Thus, no legal relationship was formed between GMAC and the debtor. *See In re Irving–Austin Building Corporation*, 100 F.2d 574, 578 (7th Cir.1938).

 It is axiomatic that parties must mutually consent to the bargain before a contract is formed. *Utley v. Donaldson*, 94 U.S. 29, 47, 24 L.Ed. 54 (1876). The same is true for modifications to a contract. *Id.; Caffrey Farms, Inc. v. Williams Pipe Line Company*, 739 F.2d 1366, 1368 (8th Cir.1984). It follows from this axiom that one cannot be forced into a commercial contract. *See National Bank v. Hall*, 101 U.S. 43, 25 L.Ed. 822 (1879) ("In making a contract, parties are as important an element as the terms with reference to the subject-matter. Mutual assent as to both is alike necessary. * * * A new party could no more be imported into the contract and imposed upon the bank without its consent, than a change could be made in like manner in the other pre-existing stipulations."); *Coast Fisheries Co. v. Linen Thread Co.*, 269 F. 841, 844 (D.Mass.1921); *Wark v. Moore*, 179 F. 873 (C.C.E.D.Pa. 1910); *Twin City Pipe Line Co. v. Harding Glass Co.*, 283 U.S. 353, 356, 51 S.Ct. 476, 477, 75 L.Ed. 1112 (1931).

While it is true that under certain circumstances, bankruptcy debtors may alter *terms* of contracts, *see* 11 U.S.C. § 1322(b)(2), there is no basis in the Bankruptcy Code for altering the *parties* to the contract or another party's contract. The debtor did not contract with GMAC and is thus not legally obligated to GMAC. *See In re Irving–Austin Building Corporation*, 100 F.2d 574, 578 (7th Cir.1938) ("Liability for debts is traceable to contractual origin."); Corbin, *Corbin on Contracts*, § 2 at 3 (1952) ("It is commonly said that a contract cannot exist even though there have been expressions of mutual assent, unless there is also a legal obligation."). Accordingly, the debtor has no contract to alter through her bankruptcy.

 There is another factor at work in this case, one that is unique to this case because the debtor is attempting to readjust a debt that is not in the first instance her debt.[4] An inherent policy and assumption of the Bankruptcy Code is that the *debtor's* obligations are the ones to be resolved through the plan process. The attempt by the debtor to schedule for payment an obligation that is not hers, to an entity which is not a "creditor" in the bankruptcy, is at odds with the purposes and provisions of the Bankruptcy Code.[5] Adequate protection is derived from the fifth amendment protection of property interest of both the debtor *and* creditor and is meant to reconcile the competing interests of the debtor *and* the creditor. *Federal Land Bank v. Carson (In re Carson)*, 34 B.R. 502, 505 (D.Kan.1983). In the instant case, the debtor is not liable on the debt she proposes to pay through her plan, and is thus not a debtor with respect to GMAC. The conflict which the Bankruptcy Code is intended to resolve simply does not exist: The lynch-pin of bankruptcy, the debtor-

---

4. She has apparently agreed with her father to pay her father's debt. However, she does not list the debt to her father in her schedules.

5. A creditor means

(A) entity that has a claim *against the debtor* that arose at the time of or before the order for relief concerning the debtor;

(B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title; or

(C) entity that has a community claim.

11 U.S.C. § 101(10) (emphasis added); *see Collier on Bankruptcy* ¶ 1300.12[5] ("[I]n general, a creditor is any person ... that has a right to payment or performance *from the chapter 13 debtor.* * * *") (emphasis added). A claim means—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5). While the definition of "claim" is a broad one, the Bankruptcy Code contemplates that legal obligations *of the debtor* are those to be reorganized. *See* 11 U.S.C. § 102(2) ("'claim against the debtor' includes claim against property of the debtor.").

creditor relationship, is not present. The debtor is attempting to create, through bankruptcy, a commercial relationship with an entity which does not wish to contract with her. This is not permitted in general contract law, and the Court will not sanction it here. *See Dr. Miles Medical Co. v. John D. Park & Sons Co.*, 220 U.S. 373, 31 S.Ct. 376, 55 L.Ed. 502 (1911) (Holmes, J., dissenting) ("I think that at least it is safe to say that the most enlightened judicial policy is to let people manage their own business in their own way, unless the ground for interference is very clear.").

Bankruptcy is intended to provide a fresh start to the debtor. Chapter 13, in particular, is intended to "facilitate adjustments of debts" by creating a method for debtors to pay their creditors. *See generally Collier on Bankruptcy* ¶ 1300.02 (15th ed. 1991). An inherent assumption and prerequisite of bankruptcy is that the debtor owes monies. However, the provisions of the Bankruptcy Code do not provide a method for paying debts belonging solely to another, or rescinding and/or restructuring another's contract. The debt to GMAC is not a debt of the debtor, or even of a co-debtor, and thus should not be a matter of dispute in this bankruptcy proceeding. While the debtor does not list her father as a creditor, it appears that the "transfer" of the vehicle may be an enforceable obligation as between the father and daughter. That is, it appears that the father is a creditor of the debtor. The Court's jurisdiction over the validity of the transfer as between father and debtor, which is not before the Court, does not compel jurisdiction over a dispute between the father and his creditor, GMAC. The unrecorded "Bill of Sale" does not cure this jurisdictional problem.

The policy of bankruptcy is to rehabilitate the debtor and provide a fresh start. However, permitting the debtor to obtain return of a vehicle, titled to another who is obligated to pay for it and for which she also is not liable, creates too many anomalies in the Bankruptcy Code. Non-bankruptcy aberrations would also be created by following the debtor's argument. If the proposed plan is confirmed which settles all rights and liabilities of the parties, the non-debtor father would arguably be totally relieved of his liability and contractual obligations which he voluntarily assumed, while the creditor, GMAC, loses its rights against this non-debtor. This Court cannot alter or rescind a contract between the father (a non-debtor) and his creditor, GMAC, where, as here, GMAC does not consent and the debtor is not jointly liable on the debt. If the debtor's argument for confirmation prevails, it would in effect create a contract between the debtor and GMAC, with the terms being dictated by the debtor, despite GMAC's unwillingness to so contract. While involuntary debtors exist, *see* 11 U.S.C. § 303, involuntary creditors do not. *National Bank v. Hall*, 101 U.S. 43, 25 L.Ed. 822 (1879); *Coast Fisheries Co. v. Linen Thread Co.*, 269 F. 841, 844 (D.Mass.1921) ("[I]t is clear that in private affairs everybody has the right to choose with whom he will contract or will not contract, and that one person cannot be put into contractual relations with another with whom he has refused to deal by any arrangement or understanding between the other person and a third person."). Should the debtor fail to complete her plan payments, GMAC would face considerable difficulty resurrecting Mr. Washington's original obligation and establishing default in any subsequent legal proceeding. Debtor has not proposed any adequate means to protect the original contract. Under these circumstances, GMAC is not adequately protected.[6] The debtor's plan cannot be confirmed. Turnover is denied.

A separate judgment shall be entered in accord with this opinion.

---

**6.** The failure of the debtor and her father to properly document the transfer of the vehicle may also deprive GMAC of adequate protection. The debtor failed to document the transfer of the vehicle in a commercially reasonable manner. Neither she nor her father had the title transferred in the public records, nor notified GMAC of the proposed transfer so that it could take steps to protect its rights. In this instance, the lack of legitimate commercial documentation interferes with reasonable commercial practice and deprives GMAC of adequate protection.

ORDERED that the Complaint for Turnover is dismissed.

IT IS SO ORDERED.