**In re David WILLIAMS and Nina Sue Williams.**

**David R. Williams and Nina Sue Williams, Plaintiffs,**

**v.**

**General Motors Acceptance Corporation, Defendant.**

**Bankruptcy No. 4:04–BK–16723 E. Adversary No. 4:04–AP–1268.**

United States Bankruptcy Court, E.D. Arkansas, Little Rock Division.

Oct. 13, 2004.

---

Stephen Bennett, for Debtors.

Joe Kolb, Little Rock, AR, for GMAC.

Jeffrey Ellis, Chapter 13 Trustee.

Joyce Bradley Babin, Trustee.

---

## MEMORANDUM OPINION AND ORDER

AUDREY R. EVANS, Chief Judge.

Now before the Court is the Complaint for Turnover of Property ("**the Complaint**"), filed by Plaintiff–Debtors David and Nina Sue Williams ("**Debtors**") and the Answer, filed by General Motors Acceptance Corporation ("**GMAC**"), Defendant in the above-captioned proceeding.[1] A Motion for Relief from Stay filed by GMAC was also consolidated with this adversary proceeding by Court Order on July 22, 2004, and a trial on this Complaint and the Motion for Relief was held on July 29, 2004. Stephen Bennett appeared on behalf of Debtors, and Joseph F. Kolb appeared on behalf of GMAC. Jeffrey Ellis, attorney for the Standing Chapter 13 Trustee, was also present. On July 30, 2004, the Court ruled orally, granted GMAC's Motion for Relief, and stated that a separate Memorandum Opinion would be entered regarding this Complaint. The Court entered a written Order granting GMAC's Motion for Relief on August 2, 2004. The Court writes this separate Opinion to address two issues raised by the Complaint. These issues are: (1) when a creditor[2] possessing estate property refuses to turn over that property until the debtor provides what the creditor deems to be adequate protection, whether that refusal is permitted or whether that refusal constitutes a willful violation of the automatic stay; and (2) whether damages for a violation of the automatic stay are warranted in this case.

The Complaint constitutes a core proceeding pursuant to 28 U.S.C.

---

1. An Objection to Confirmation, filed by GMAC, was also consolidated for trial purposes with the above-captioned adversary proceeding. However, at the start of this trial, counsel for GMAC announced that its Objection to Confirmation would be withdrawn.

2. The term "creditor" as used in this Opinion refers to secured creditors.

§ 157(b)(2)(E).[3] and the Court has jurisdiction to enter a final judgment in this case. The following constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

## FACTS

The relevant facts of this case are not in dispute.[4] On October 17, 1998, Debtors purchased a 1999 model Pontiac Grand Am ("the Vehicle") under a Retail Installment Sale Contract with GMAC. Debtors financed $18,026.00 at an annual percentage rate of 7.5%. GMAC took a security interest in the Vehicle and properly perfected that security interest, as evidenced by the notation of its lien on the Vehicle's Certificate of Title.

In April 2000, Debtors filed their first petition under Chapter 13 of the Bankruptcy Code.[5] That case was dismissed in May of 2001 prior to confirmation. In October 2001, Debtors executed a refinancing agreement with GMAC in the principle amount of $10,080.17 secured by the Vehicle. The last payment GMAC received on this agreement was in January 2002. Separate Debtor Nina Williams filed a second petition under Chapter 13 on January 7, 2002. Ms. Williams' case was dismissed on her own motion on March 1, 2002.

Following this dismissal, GMAC assigned the Vehicle for repossession, but was unsuccessful in locating the Vehicle until May of 2004. At that time, GMAC received information from the Internal Revenue Service regarding the location of the Vehicle. GMAC repossessed the Vehicle on June 22, 2004. However, Debtors had filed the instant petition under Chapter 13 on June 9, 2004. At the time of repossession, GMAC was unaware that Debtors had filed this petition. Debtors' counsel contacted GMAC on the same day as the repossession and informed personnel at GMAC of this bankruptcy filing. GMAC did not turn the Vehicle over to Debtors when they made demand through counsel. Debtors entered proof of insurance of the Vehicle into evidence. The insurance coverage period began prior to repossession and ran through September 2004.

## LAW AND DISCUSSION

The primary issue before the Court is whether in a proceeding under Chapter 13, a lien creditor can withhold turnover of a debtor's collateral contingent on the debtor providing what the creditor deems to be adequate protection. GMAC argues, in essence, that a creditor's asserted lack of adequate protection does, in fact, constitute a defense to turnover of estate property to a debtor. GMAC bases this argument on an opinion of the Bankruptcy Court for the Eastern District of Arkansas, *In re Washington*, which found that "[w]hether a secured interest can be adequately protected, if the creditor demands adequate protection, is a condition prece-

---

3. All further references to code sections pertain to the Bankruptcy Code, Title 11, United States Code, unless otherwise noted.

4. The Court made other findings of fact in its oral ruling of July 30, 2004, regarding GMAC's Motion for Relief, however those findings are not relevant to this Opinion and are not reiterated here. The facts stated in this Opinion relate solely to the Complaint.

5. The Court also takes judicial notice of all filed documents in Debtors' current case and previous cases which are referenced in this Order. *See* Fed.R.Evid. 201; *In re Henderson*, 197 B.R. 147, 156 (Bankr.N.D.Ala.1996) (citations omitted) (noting that court may take judicial notice of its own orders and of records in a case before the court, as well as of documents filed in another court) (citations omitted); *see also In re Penny*, 243 B.R. 720, 723 n. 2 (Bankr.W.D.Ark.2000).

dent to an order for turnover." *In re Washington,* 137 B.R. 748, 751 (Bankr. E.D.Ark.1992) (citation omitted). At trial, Debtors emphasized the fact that GMAC failed to turn over the Vehicle once it became aware of the bankruptcy filing and Debtors made a turnover demand. Debtors cited this Court's prior opinion in *In re Raney,* No. 4:02-ap-1190E, 2002 WL 32114563 (Bankr.E.D.Ark. Oct.4, 2002), the Court of Appeals for the Eighth Circuit's decision in *Knaus v. Concordia Lumber Co., Inc. (In re Knaus),* 889 F.2d 773 (8th Cir.1989), and the U.S. Supreme Court case *United States v. Whiting Pools, Inc.* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) for the proposition that (1) if estate property has been repossessed by a creditor, the creditor has an affirmative duty to return that property and (2) that turnover is not contingent on the issue of whether the creditor is adequately protected.

As explained in further detail below, the Court holds that GMAC, the lien creditor in this case, willfully violated the automatic stay when it withheld turnover of the Vehicle contingent on Debtors' provision of what GMAC deemed to be adequate protection. The Court further holds that, although GMAC willfully violated the automatic stay in this case by withholding turnover, Debtors will not be awarded monetary damages, since they did not meet their burden of proof on that issue.

*I. Code Provisions Relating to the Automatic Stay, Adequate Protection, and Turnover*

▮▮▮ In order to understand the findings in this case, it is necessary to begin with a review of the relevant provisions of the Bankruptcy Code and the proper construction of these provisions. The construction of any statute, including those statutes which comprise the Bankruptcy Code, "begins with the language of the statute itself." *In re Hen House Interstate, Inc.,* 177 F.3d 719, 722 (8th Cir.1999) (citations omitted). If the language of the Bankruptcy Code is clear and unambiguous, the Court's function is "to enforce [that language] according to its terms." *Id.* at 722–23 (citations and internal quotations omitted). It is from this perspective that the Court evaluates the statutes at issue here, which are §§ 362, 363, and 542(a).

This case was brought as a Complaint for Turnover of a Vehicle. The Court therefore begins its analysis with § 542(a), the relevant provision addressing turnover of estate property. It provides as follows:

> Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

§ 542(a).

No party disputed the fact that the Vehicle at issue here constituted property of the estate under § 541, thus rendering this Vehicle subject to the turnover requirement of § 542(a). The Court notes that nowhere in § 542(a) is there any reference to adequate protection as a defense to turnover of estate property. This fact is discussed in further detail later in this Opinion.

▮▮▮ The Court also considers the other provisions relevant to this case, beginning with the automatic stay and followed by the concept of adequate protection. Section 362(a)(3) imposes the automatic stay on estate property and provides, in part,

that the filing of a bankruptcy petition operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate . . . ." A primary goal of the automatic stay is "to prevent a chaotic and uncontrolled scramble for the debtor's estate, thereby permitting systematic and equitable distribution." *In re National Warranty Ins. Risk Retention Group*, 306 B.R. 614, 623 (8th Cir. BAP 2004) (citation omitted).

■ The concept of adequate protection as it relates to relief from the automatic stay is contained in § 362(d), which states in part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . . .

The purpose of "adequate protection" is "to protect an entity's interest in property from a decline or threatened decline in value." *In re Harper Development*, No. 4:01–bk–4606 E, 2002 WL 32114481, at *3 (Bankr.E.D.Ark. July 19, 2002) (citations omitted). Section 361 describes how adequate protection may be provided.[6]

Section 363(e) addresses the method by which the court can ensure the provision of adequate protection. This section provides that the court shall prohibit or condition the use or sale of estate property, upon request by a party with an interest in that property, "as is necessary to provide adequate protection of such interest." § 363(e).

The relationship between these statutes lies at the heart of this discussion and is crucial to the reasoning in this case. The Court concludes, in sum, that although a lack of adequate protection constitutes grounds for relief from the automatic stay, it does not follow that a creditor in possession of estate property can avoid a stay violation if that creditor withholds turnover of estate property based on the unilateral assertion that its lien interest is not adequately protected. The Court arrives at this conclusion based on the language of §§ 362, 363, and 542(a) and case law interpreting these provisions, as analyzed further below.

## II. *In re Knaus' and the Bankruptcy Code's Impact on the Notion of a Lack of Adequate Protection as a Defense to Turnover*

### A. *In re Knaus and its Applicability to Chapter 13 Cases*

The Court of Appeals for the Eighth Circuit discussed the relationship between the above-referenced Code provisions in a

---

6. Section 361 states as follows:
   When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—
   (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
   (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
   (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

seminal case on turnover, *In re Knaus.* Since *Knaus* arose in the context of a petition filed under Chapter 11, before proceeding further with its analysis, the Court must address whether Chapter 13 debtors can invoke the turnover provision of the Code and whether *Knaus* is applicable to turnover actions under Chapter 13.

■ Section 542(a) does not state whether a Chapter 13 debtor has the right to demand turnover. It does, however, provide for turnover to the trustee of property "that the trustee may use, sell, or lease under section 363...." § 542(a). Moreover, § 1303 provides that "the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(*l*), of this title." It is this relationship between §§ 363, 542(a), and 1303 that gives Chapter 13 debtors the authority to demand turnover. As the Bankruptcy Appellate Panel for the Sixth Circuit stated in *In re Sharon,* "[t]o the extent that a Chapter 13 debtor can then use property of the estate under § 363, the debtor succeeds to the mandate in § 542(a) that compels delivery of property that is usable under § 363." *In re Sharon,* 234 B.R. 676, 687 (6th Cir. BAP 1999). Similarly, the court in *In re Radden* found:

> Section 1303 provides the debtor with the rights and powers that a trustee would have under Chapter 7 or the debtor in possession would have under Chapter 11. Consequently the debtor is a proper party to seek turnover pursuant to § 542(a) because the property that the debtor seeks to have turned over is property that he as debtor may use ....

*In re Radden,* 35 B.R. 821, 826 (Bankr. E.D.Va.1983) (footnote omitted).

The Court concurs with these cases' interpretations of the relevant Code provisions. Because Chapter 13 debtors are appropriate parties to bring turnover actions against creditors in possession of estate property, it follows logically that the reasoning in *Knaus* regarding turnover in Chapter 11 cases also applies to turnover actions in Chapter 13 cases.[7]

### B. Creditors' Asserted Lack of Adequate Protection is not a Defense to Turnover or a Stay Violation

■ Having determined that the logic of *Knaus* applies to the case at bar, the Court now turns to the effect of *Knaus* on GMAC's assertion that turnover of a debtor's collateral may be conditioned on the debtor providing what the creditor deems to be adequate protection.

In the *Knaus* case, the Eighth Circuit held that a creditor's failure to voluntarily return estate property to the debtor, regardless of whether that property was lawfully repossessed prepetition, constituted a prohibited attempt to "exercise control over property of the estate" in violation of the automatic stay under § 362(a)(3). *Knaus,* 889 F.2d at 775 ("The failure to fulfill [the duty to turn over property], regardless of whether the original seizure was lawful, constitutes a prohibited attempt to 'exercise control over the property of the estate' in violation of the automatic stay."). The Eighth Circuit also reasoned that "[t]he duty to turn over the property is not contingent upon any predicate violation of the stay, any order of the bankruptcy court, or any demand by the creditor [sic-trustee]." *Id.* (citation omitted). In arriving at these conclusions, the Eighth Circuit relied on the language of §§ 362(a)(3), 542(a), and the U.S. Su-

---

**7.** The Court respectfully disagrees with the reasoning of at least one court that "[t]he Chapter 13 debtor is not the beneficiary of a creditor's turnover duty under Section 542 ...." *Matter of Brown,* 210 B.R. 878, 882 (Bankr.S.D.Ga.1997).

preme Court case of *Whiting Pools*. The Eighth Circuit interpreted *Whiting Pools* to stand for the proposition that "property seized but not yet sold before the filing of the bankruptcy petition is property of the estate subject to turnover requirements of section 542." *Knaus,* 889 F.2d at 775.

Certainly, the *Knaus* decision is not without its critics, and other courts outside the Eighth Circuit have declined to follow it for various reasons. *See, e.g., In re Young,* 193 B.R. 620, 624 (Bankr.D.D.C. 1996) ("This court rejects the *Knaus* court's (and its progeny's) interpretation of the amendment to § 362(a)(3) which requires immediate turnover by the secured creditor possessing property rightfully seized prepetition."); *In re Massey,* 210 B.R. 693, 696 (Bankr.D.Md.1997) (rejecting *Knaus* and adopting the reasoning in *In re Young*); *In re Barringer,* 244 B.R. 402, 409–10 (Bankr.E.D.Mich.1999) (rejecting idea in *Knaus* that § 542(a) is self-effectuating as to property seized prepetition). Despite criticism of *Knaus* by other courts, it is still the law in the Eighth Circuit, and therefore this Court is bound to follow it.

In this case, unbeknownst to GMAC at the time it repossessed the Vehicle, Debtors had filed the instant petition. This action constituted a postpetition repossession of estate property. However, as a defense to the failure to return the Vehicle on Debtors' demand, counsel for GMAC argued at trial that "[adequate protection] is one if not the only exception to the turnover rule." Admittedly, the *Knaus* decision did not specifically discuss the question of whether creditors' asserted lack of adequate protection constitutes a defense to turnover; nevertheless a reasonable reading of the *Knaus* opinion and other opinions which agree with its reasoning lead to the proposition that creditors cannot unilaterally withhold turnover of

estate property based on their own belief that they are not adequately protected.

The interplay between the relief from stay and turnover provisions of the Code create the impression of conflict between them. This perceived conflict arises because a debtor is entitled to turnover of estate property, but creditors are also entitled to relief from stay if the debtor cannot provide adequate protection. These two entitlements create the perception in the minds of some creditors that they can refuse to turn over estate property to a debtor because they would otherwise be entitled to relief from stay and possession of the collateral, based on a lack of adequate protection under § 362(d)(1). Retention of collateral makes sense from the creditors' perspective, since they reason it is illogical to return a vehicle to a debtor who has, at least in the creditors' eyes, failed to adequately protect their lien interest.

■ However, the fundamental problem with this notion is that it is not the creditors' prerogative to determine whether the collateral is adequately protected; rather, that determination is the sole prerogative of the Court. In fact, the plain language of § 363 states that "the court" is the authority that prohibits the use or sale of encumbered estate property when faced with a question of adequate protection, not the party with the interest in that property. Nowhere in §§ 362, 363, or 542 is there any language providing that a creditor may assert a lack of adequate protection as a defense to turnover of estate property. As the *Sharon* court stated:

[s]ections 362, 363 and 542 assign to the bankruptcy court, not to creditors, the prerogative to make judgments whether a particular car should continue to be used by a Chapter 13 debtor, will remain protected by the automatic stay and whether an offer of adequate protection

is sufficient to continue possession and use by the debtor.

*Sharon,* 234 B.R. at 685.

The *Sharon* court correctly recognized that these statutes vest the determination of the sufficiency of adequate protection solely in the bankruptcy court.

These Code provisions, coupled with the Eighth Circuit's determination in *Knaus* that a creditor has an affirmative duty to turn over estate property upon the filing of a bankruptcy petition, leave no room for a creditor to withhold turnover based on that creditor's own perception of what constitutes adequate protection. This Court has so held in a prior opinion. *See In re Brown,* No. 3:02–bk–23056 E, 3:02–ap–1350, 2003 WL 21402570, at *3 n. 4 (Bankr. E.D.Ark. May 1, 2003) (citing *Sharon* for proposition that "[t]here is no 'exception' to 362(a)(3) that excuses [creditor's] refusal to deliver possession of the Debtor's car based on [creditor's] subjective opinion that adequate protection offered by the Debtor was not 'adequate.'"). Courts throughout the United States have also held that creditors cannot unilaterally assert a lack of adequate protection as a defense to turnover. *See Sharon,* 234 B.R. at 685 (citing *Knaus* in support of proposition that "[t]he Courts of Appeals for the Eighth and Ninth Circuits have rejected [creditor's] argument that a creditor cannot violate the automatic stay by withholding possession of estate property until the debtor obtains a court order for adequate protection and turnover."); *Nissan Motor Acceptance Corp. v. Baker,* 239 B.R. 484, 488–89 (N.D.Tex.1999) (rejecting creditor argument that it had "the right to seek adequate protection by retaining the Vehicle to protect its interest" and finding "[t]here is nothing in § 363(e) that grants a creditor like Appellant the authority to engage in self-help to retain estate property as adequate protection ...."); *In re*

*Metromedia Fiber Network, Inc.,* 290 B.R. 487 (Bankr.S.D.N.Y.2003) (holding that creditor must turn over estate property and that creditor could not retain possession until debtor first provided adequate protection); *In re Zaber,* 223 B.R. 102, 105 (Bankr.N.D.Tex.1998) ("Like § 363, § 542(a) titled 'Turnover of property to the estate' requires no preliminary action on the part of the debtor. The statute contains no provision requiring adequate protection as a prerequisite to turnover.") (footnote omitted); *In re Berscheit,* 223 B.R. 579, 581 (Bankr.D.Wyo.1998) (adopting reasoning in *Knaus* and rejecting creditor argument that turnover not required until adequate protection requirements of § 363 are met); *In re Foust,* No. 98–50774 SEG, 98–5032 SEG, M198–00185, 2000 WL 33769159, at *4, 6 (Bankr.S.D.Miss. July 18, 2000) (rejecting creditors' argument that they were justified in retaining seized collateral until their motion for relief from stay and adequate protection was heard and holding that "postpetition retention of estate property without court authority following a prepetition seizure constitutes an exercise of control over property of the estate and is a violation of the automatic stay.").

In light of the foregoing case law and analysis, the Court rejects GMAC's argument that its perceived lack of adequate protection constitutes a defense to Debtors' Complaint for Turnover of the Vehicle at issue in this case. The Court aligns itself with the case law consistent with this reasoning and will not follow the *Washington* case relied on by GMAC to the extent that that case is inconsistent with this Opinion.

When creditors do face situations where they truly believe collateral is in immediate jeopardy, they are not without recourse. In those situations, "the 'congressionally established bankruptcy procedure'

is expedited relief under § 362(f) ....."
*Sharon,* 234 B.R. at 685; *see also Metromedia,* 290 B.R. at 493. Section 362(f) states:

Upon request of a party in interest, the court, with or without a hearing, shall grant such relief from the stay provided under subsection (a) of this section as is necessary to prevent irreparable damage to the interest of an entity in property, if such interest will suffer such damage before there is an opportunity for notice and a hearing under subsection (d) or (e) of this section.

This provision, which provides for relief with or without a hearing, is sufficient to protect creditors whose lien interests may truly suffer "irreparable damage" before there is opportunity for notice and a hearing under § 362(d). *See also* Federal Rule of Bankruptcy Procedure 4001(a)(2).

### III. Damages for the Stay Violation

■■ Debtors, at trial, raised the issue of what damages are appropriate in response to GMAC's failure to turn over the Vehicle. Section 362(h) provides that individuals who are injured by a willful violation of the automatic stay "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." The party seeking damages for a stay violation must establish that: "(1) a violation occurred; (2) the violation was committed willfully, (3) the violation caused actual damages." *Rosengren v. GMAC Mortg. Corp.,* No. CIV. 00–971(DSD/JMM), 2001 WL 1149478, at * 2 (D.Minn. Aug.7, 2001) (citing *Lovett v. Honeywell, Inc.,* 930 F.2d 625, 628 (8th Cir.1991) (further citations omitted)). The *Knaus* court reasoned that "[a] willful violation of the automatic stay occurs when the creditor acts deliberately with knowledge of the bankruptcy petition." *Knaus,* 889 F.2d at 775 (citations omitted). The

*Knaus* court went on to hold that when the debtor informs the creditor of a bankruptcy filing and requests turnover of estate property, but the creditor refuses to turn over the property, this constitutes a willful and deliberate violation of the automatic stay. *Id.*

■ However, § 362(h) also provides that a willful violation of the automatic stay alone is not enough to warrant punitive damages; there must also be a finding of "appropriate circumstances." *Id.* at 776. "Appropriate circumstances" warranting punitive damages require " 'egregious, intentional misconduct on the violator's part.' " *Id.* (citing *United States v. Ketelsen (In re Ketelsen),* 880 F.2d 990, 993 (8th Cir.1989)).

■ In the instant case, Debtors informed GMAC of their bankruptcy filing and sought turnover of the Vehicle, but GMAC refused. Under *Knaus,* GMAC's failure to turn over the vehicle, once it became aware of the bankruptcy filing, constituted a willful violation of the automatic stay. This subjected GMAC to possible damages; however, there was no evidence of monetary damages entered into the record. At trial, Debtors, through counsel, conceded that there was insufficient evidence as to the amount of damages, but stated their desired remedies would be the return of the Vehicle, the dismissal of GMAC's then-pending Motion for Relief, and the release of GMAC's lien. Given that the burden is on Debtors to demonstrate damages, the Court finds, in light of the evidence at trial, that no monetary damages will be awarded to Debtors. *See In re Clayton,* 235 B.R. 801, 810–11 (Bankr.M.D.N.C.1998) (reasoning that despite willful violation of the automatic stay, no damages could be awarded under § 362(h) since no evidence as to damages was presented).

Regarding the specific requests by Debtors, i.e. dismissal of GMAC's then-pending Motion for Relief and release of GMAC's lien, these remedies constitute a form of punitive sanction. Such relief would thus be more appropriate where, as in *Raney*, the Court awarded punitive damages. *See Raney*, 2002 WL 32114563, at *1 (awarding punitive damages when vehicle was repossessed months after notice to creditor of bankruptcy filing and creditor failed to turn over vehicle despite debtor's request and offer to pay delinquent payments). In this case, GMAC had a good faith basis to act as it did in withholding turnover, based on the *Washington* case and did not engage in any egregious misconduct. There is therefore no cause to award the other remedies requested by Debtors. However, it is an open question whether an award of punitive damages would be warranted if, in the future, a creditor decides, in spite of this Opinion, to withhold turnover of estate property under similar circumstances.

### CONCLUSION

Creditors in possession of collateral constituting estate property violate the automatic stay if they retain possession of that collateral postpetition following a debtor's demand for turnover. If creditors are asked to return collateral constituting estate property, it is insufficient to avoid a violation of the stay simply by filing a motion for relief and retaining possession of the collateral pending a hearing under § 362(d). Creditors who proceed in this manner risk damages for a violation of the automatic stay, even if such creditors ultimately prevail on their motions for relief from the stay based on a lack of adequate protection. Pursuant to the aforementioned statutes and case law, creditors who believe their lien interests are in imminent jeopardy should seek expedited relief under § 362(f).

In this case, GMAC's Motion for Relief and Debtors' Complaint were heard simultaneously, and the Court granted GMAC's Motion for Relief for cause. If the Motion for Relief had not been granted, then this Court would have directed the immediate turnover of the Vehicle. However, since stay relief was granted and no damages are awarded to Debtors, this Complaint is dismissed, as there is no relief left that could be granted to Debtors.

Accordingly, for the reasons stated herein, it is

**ORDERED** that Debtors' Complaint is **DISMISSED.**

**IT IS SO ORDERED.**