**Cheryl Marla CARR, Plaintiff/Appellee,**

v.

**SECURITY SAVINGS & LOAN ASSOCIATION, Defendant/Appellant.**

Civ. A. No. 90–2945(SSB).

United States District Court,
D. New Jersey.

Aug. 8, 1991.

Farr, Lyons, Burke, Gambacorta & Wright, P.C. by Hillary Breitbart, Bellmawr, N.J., for appellant Security Sav. Bank.

David Paul Daniels, P.A. by Jeannette M. Amodeo, Camden, N.J., for appellee Cheryl M. Carr.

OPINION

BROTMAN, District Judge.

Presently before the court is the appeal of Security Savings Bank, S.L.A., from the April 30, 1990 order of the United States Bankruptcy Court.

## I. FACTS AND PROCEDURE

Cheryl M. Carr, appellee in this matter ("debtor"), filed for bankruptcy protection under 11 U.S.C. Chapter 13 on September 21, 1988. Debtor's plan proposed to pay appellant, a secured creditor, the value of its collateral, debtor's car (a 1987 Ford Escort GT). Appellant, Security Savings Bank, S.L.A., ("Security Savings" or "the bank") moved for relief from the automatic stay in July of 1989 as a result of debtor's failure to keep her payments current. The Bankruptcy Court denied Security Savings' motion in an order dated August 4, 1989. In that order, the Bankruptcy Court granted a thirty-day default provision to Security Savings in the event that debtor failed to keep her payments current.

Debtor again defaulted on her payments to her trustee. Pursuant to the August 4, 1989 order, Security Savings filed a Certificate of Default with the Bankruptcy Court. By order dated January 29, 1990, the Bankruptcy Court granted Security Savings relief from the automatic stay and the right to possess debtor's car. Also in January of 1990, debtor's trustee filed a motion to dismiss the bankruptcy proceeding due to debtor's failure to make payments according to the plan. The Bankruptcy Court continued that motion to March 14, 1990 in order to review debtor's employment status. On March 14, 1990, the Bankruptcy Court dismissed debtor's case on the trustee's motion.

Pursuant to the January 29, 1990 order granting relief from the automatic stay, Security Savings sought to repossess debtor's car, but was unable to locate it until late February, 1990. Upon the attempted repossession of the car, debtor offered to enter into a payment arrangement with Security Savings, independent of the trustee's plan; the first payment was due March 5, 1990. After debtor defaulted on the first payment to Security Savings, the bank again sought repossession. On April 3, 1990, Security Savings repossessed debtor's car. The next day, April 4, 1990, debtor filed a second petition for bankruptcy protection pursuant to 11 U.S.C. Chapter 13. Debtor's counsel wrote to Security Savings' counsel that day, advising the bank to release the vehicle pursuant to the automatic stay provisions of 11 U.S.C. § 362(a). Security Savings advised debtor's counsel that proof of insurance would be necessary before the car would be released. On April 5, 1990, debtor submitted proof of her insurance. Security Savings verified the insurance coverage on April 6, 1990.

On April 10, 1990, Security Savings filed a motion for relief from the automatic stay. The bank sought to compel debtor to prove that there had been a bona fide change in circumstances since the dismissal of her previous bankruptcy proceeding, thus justifying her new petition. That same day, debtor filed an Adversary Complaint and Order to Show Cause against Security Savings for turnover of the car and for sanctions pursuant to 11 U.S.C. § 362(h) for willful violation of the automatic stay.

The Bankruptcy Court held a hearing on both applications on April 25, 1990 and adjourned the matter to April 30, 1990. After hearing the testimony of debtor and the arguments of counsel on April 30, 1990, the Bankruptcy Court found that there had been a bona fide change in circumstances since the dismissal of the initial proceeding, thus allowing the second bankruptcy proceeding pursuant to 11 U.S.C. § 109(g)(1). The Bankruptcy Court held that the failure of the bank to return the car to debtor immediately upon receiving notice of debtor's second bankruptcy petition was a willful violation of the automatic stay imposed by 11 U.S.C. § 362. Once the Bankruptcy Court determined that a willful violation had occurred, it found that under § 362 it had no discretion not to award debtor her actual damages for the injury she suffered as a result. The Bankruptcy Court awarded debtor the cost of car rental for the period in which she was deprived of the use of her car, $510.00, less $300.00 in repossession costs incurred by Security Savings. Pursuant to § 362(h), the Bankruptcy Court also awarded debtor $500.00 in attorney fees arising from the willful violation of the stay. The Bankruptcy Court declined to impose punitive damages. Securi-

ty Savings now appeals from the decision of the Bankruptcy Court.

The parties concur that the issue on appeal is whether a secured creditor, who has obtained an order for relief from the automatic stay in a prior bankruptcy proceeding and has repossessed collateral pursuant to that order, is required pursuant to 11 U.S.C. § 362(a) to immediately turn over the repossessed collateral to the debtor's estate upon the debtor's subsequent refiling of a bankruptcy petition.

## II. DISCUSSION

### Standard of Review

When considering factual determinations of the bankruptcy court, the district court must accept the findings of the bankruptcy court unless they are clearly erroneous. Rule 8013 of the Rules of Bankruptcy Procedure. The district court must review all questions of law de novo. *Matter of Dunes Casino Hotel,* 63 B.R. 939, 944 (D.N.J.1986). Neither party contests the factual findings of the Bankruptcy Court. As the issue presented for review is a question of law, the court will conduct a *de novo* review.

### Automatic Stay and Subsequent Bankruptcy Petitions

■ The court must determine an issue of first impression, namely, whether it is a violation of the automatic stay for a secured creditor to refuse to turn over repossessed collateral before the bankruptcy court determines that a subsequent bankruptcy petition was filed in good faith. This question arises from the interplay between 11 U.S.C. §§ 109(g) and 362(a). Under 11 U.S.C. § 362(a) ("Automatic stay"), Security Savings was obliged to turn over the repossessed car immediately after the filing of the second petition and the verification of insurance. *In re Loof,* 41 B.R. 855, 856 (Bkrptcy.E.D.Pa.1984). The automatic stay provision states:

> ... a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—
>
> . . . . .

> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

11 U.S.C. § 362(a)(3). It is undisputed that debtor's car constituted property of the estate under 11 U.S.C. § 541 ("Property of the estate"). *See United States v. Whiting Pools, Inc.,* 462 U.S. 198, 209–10, 103 S.Ct. 2309, 2315–16, 76 L.Ed.2d 515 (1983) ("the reorganization estate includes property of the debtor that has been seized by a creditor prior to the filing of a petition for reorganization"); *In re Attinello,* 38 B.R. 609 (E.D.Pa.1984) (Applying the holding in *Whiting Pools* to Chapter 13 cases). A secured creditor who is in possession of repossessed collateral in which a debtor in bankruptcy has an interest is required to turn the collateral over to the debtor's trustee upon the filing of the bankruptcy petition. 11 U.S.C. § 362(a); *see also Matter of M. Frenville, Co., Inc.,* 744 F.2d 332 (3d Cir.1984). However, under 11 U.S.C. § 109(g), debtor was not allowed to commence a second bankruptcy proceeding within 180 days of her last proceeding, absent a bona fide change in circumstances. *In re Chmura,* 63 B.R. 12 (Bkrptcy.D.N.J.1986).

Security Savings claims that debtor had the burden of proving that there was a bona fide change in circumstances before Security Savings was obliged to turn over the car. Security Savings argues that it did not violate the automatic stay since it filed a motion for relief from the automatic stay within days of the filing of the second petition, did not take any further action to proceed with the sale of the car, and merely maintained possession of the car pending a determination by the Bankruptcy Court of whether debtor's second bankruptcy case would be allowed to proceed. In addition, the bank received an order for relief from the automatic stay in the first bankruptcy proceeding on January 29, 1990, but was unable to repossess the car until April 3, 1990.

Debtor claims that the automatic stay is exactly what it purports to be: automatic. Debtor also claims that Security Savings has conceded the violation of the automatic

stay by moving for relief from the stay after debtor had filed her second bankruptcy petition. Debtor contends that it is a violation of the automatic stay for a creditor to exercise control over property of the estate, including an "exercise of dominion over property in which creditor has a possessory security interest." *In re Taco Ed's,* 63 B.R. 913, 930–31 (Bkrptcy. N.D.Ohio 1986) (dictum). Hence, debtor claims that the bank's refusal to turn over the car constituted a willful violation of the automatic stay and that the Bankruptcy Court properly required Security Savings to pay debtor's actual damages pursuant to 11 U.S.C. § 362(h).

Security Savings does not claim that it was entitled to proceed with the sale of the car in spite of the filing of the second petition. Rather, the bank claims that it was entitled to maintain the status quo by retaining possession of the car pending a showing by debtor that there had been a bona fide change in circumstances, thus justifying a new petition within 180 days of the previous proceeding. Security Savings notes that 11 U.S.C. § 362(a) prohibits a secured creditor from exercising "control" over property of the estate. The bank claims that it is significant that the word used is not "possession." In support of this argument, Security Savings points to a line of cases which hold that it is not a violation of the automatic stay for a bank to freeze a debtor's account when the debtor files a bankruptcy petition, citing *In re Hoffman,* 51 B.R. 42, 46 (Bkrptcy. W.D.Ark.1985) (Bank's administrative freeze was reasonable and did not violate automatic stay in Chapter 7 proceeding); *In re Edgins,* 36 B.R. 480, 483–84 (9th Cir.Bkrptcy.App.1984) (Creditor bank did not violate automatic stay by freezing debtor's account); *In re Davis,* 29 B.R. 652 (Bkrptcy.W.D.N.Y.1983) (Creditor bank's freezing of debtor's account pending a determination of setoff rights did not violate automatic stay). However, the Third Circuit has held that a bank cannot freeze a debtor's account during a Chapter 13 bankruptcy proceeding; to do so would hamper the debtor's ability to work and make payments to the trustee. *See U.S. v. Norton,*

717 F.2d 767, 773 (3d Cir.1983) (Internal Revenue Service's administrative freeze constituted a setoff that violated the automatic stay); *Lee v. Schweiker,* 739 F.2d 870, 876 (3d Cir.1984) (Social Security Administration could not offset debtor's debts by retaining payments due). As the Third Circuit has come to a different conclusion than the courts in *Hoffman, Edgins,* and *Davis,* this court cannot find those opinions persuasive.

Nevertheless, rejection of *Hoffman, Edgins,* and *Davis* does not resolve the issue raised in the instant case as those cases involved setoff and the freezing of a debtor's account. Here, the issue has been raised as to the creditor's right to maintain possession of a repossessed vehicle which is not subject to setoff in the same manner as a bank account.

As there is no precedent on this issue in the Third Circuit or in any other court, the court looks to the policy and intent behind the automatic stay in order to determine whether the bank violated the stay. The automatic stay provision is "one of the fundamental debtor protections provided by the bankruptcy laws." H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6296. The basic policy behind the automatic stay is to promote the orderly administration of the estate while relieving the debtor from the pressures that drove the debtor to bankruptcy in the first place. R. Aaron, *Bankruptcy Law Fundamentals* 5–3 (1984). It accomplishes this goal by allowing the bankruptcy court time to sort through matters without the interference of anxious creditors. *Id.*

The automatic stay is also designed to prevent a creditor from pursuing remedies against the debtor's assets to the detriment of other creditors. B. Weintraub & A. Resnick, *Bankruptcy Law Manual* 1–31 (1986). If the speediest creditors were permitted to continue to seize the debtor's property after the bankruptcy case had commenced, an orderly liquidation and fair and equal distribution of the estate would be frustrated. *Id.*

■ While the scope of the automatic stay is extremely broad, there are eleven exceptions to the stay codified at 11 U.S.C. § 362(b). The circumstances in the instant case do not fall within any of statutory exceptions, therefore, the court must determine whether it should create an exception to the automatic stay. Given the policies underlying the automatic stay, judicial creation of an exception to the automatic stay should be undertaken only in the most egregious circumstances, if at all. Judicial resistance to the creation of exceptions to the automatic stay stems from the need for uniformity and clarity in bankruptcy law, as well as the desire to minimize litigation.

■ Section 362(a) expressly states that the filing of a bankruptcy petition activates the stay. Congress, if it wished, could have created an exception to the imposition of the automatic stay where successive petitions are filed, but it did not. The court will not create a judicial exception to the automatic stay solely on the basis of subsequent bankruptcy petitions. After considering the circumstances of this case, the court finds that they do not warrant creation of a judicial exception to the automatic stay. To create such an exception simply because a debtor filed a subsequent petition would have far-reaching effects, and would fundamentally alter the operation of bankruptcy law. The bankruptcy court would be deluged with emergency petitions to put the automatic stay into effect. Such an important change in interpretation of the bankruptcy code should be undertaken most reluctantly by any court, and is more appropriately raised before Congress.

Although a secured creditor might be placed at a disadvantage by being obliged to turn over repossessed collateral upon the filing of a possibly improper Chapter 13 bankruptcy petition, the potential harm to the creditor is partially mitigated by the requirement of adequate protection of the collateral, *In re Loof,* 41 B.R. at 856, and by the possibility of recovering the costs of repossession against the debtor, as Security Savings did in the first bankruptcy proceeding. The automatic stay provision of the bankruptcy code is a fundamental pro-

tection afforded the debtor, and that protection should not be compromised. In the instant case, the court concludes that the bank's failure to turn over debtor's car upon the filing of debtor's bankruptcy petition constituted a violation of the automatic stay.

### III. CONCLUSION

For the foregoing reasons, the court affirms the April 30, 1990 order of the Bankruptcy Court. This decision comports with the policies of the bankruptcy code as created by Congress, favoring the protection of the debtor and the efficient management of the debtor's estate.