**In re Frank R. ZABER, Debtor.**

**Bankruptcy No. 98–33318 RCM–13.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

May 11, 1998.

Alicia M. Dewey, Dallas, TX, for Debtor.

Edward D. Biggers, Dallas, TX, for GMAC.

### MEMORANDUM OPINION

ROBERT C. McGUIRE, Chief Judge.

On April 28, 1998, came on to be heard the emergency motion of debtor Frank R. Zaber ("Debtor" or "Zaber") to hold General Motors Acceptance Corporation ("GMAC") in violation of the automatic stay, and for turnover of property of the estate.[1]

The Court has jurisdiction over this proceeding,[2] which is a core proceeding.[3] Following are the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rules 9014 and 7052. These findings of fact and conclusions of law memorialize, supplement, and amend those pronounced in open court on April 28, 1998.

Zaber leased a 1994 Chevrolet Lumina (the "Automobile") in 1994. In 1996, he purchased the Automobile and financed the purchase through GMAC. His monthly payment totaled approximately $352.24. Zaber kept his payments on the note to GMAC current for approximately four years. Debtor was current on his retail installment contract through January 1, 1998.

In January 1998, Zaber lost his job and informed GMAC of that fact on January 21, 1998. He fell behind in his car payments for the months of February and March. Zaber became employed again on March 23, 1998.

GMAC repossessed the Automobile on April 9, 1998, the date that the April payment was due.

On April 12, 1998, Debtor rented a replacement vehicle at $180 per week, which he was still renting on April 28, 1998. He needed the vehicle to get back and forth to work.

On April 15, 1998, Zaber filed a Chapter 13 proceeding and promptly notified GMAC and furnished proof of insurance to GMAC, with an effective date of March 1, 1998 and expiration date of September 1, 1998. There was no competent evidence in the record that GMAC had any legitimate concerns regarding Debtor's potential flight, concealment of the Automobile, or insurance coverage.

GMAC indicated it would not return the Automobile without payment of its prepetition claim for repossession and storage fees totaling $346.40. While protesting, Debtor, through his attorneys, agreed to pay same off at $100 per month, and GMAC agreed to this payment. Debtor's plan was not due until April 30, 1998.

The breakdown in negotiations occurred thereafter on approximately April 21, 1998, over the proposed agreed order GMAC furnished to Debtor' attorneys, wherein, among other things, GMAC required the debt to be scheduled at $7,528, the value of the Automobile to be found at $8,425, a payout term of twenty-four months at 10.25% interest,[4] with adequate protection disbursements of 1.50%. Such order was a "drop dead order," which further provided that, if Debtor failed to make the monthly repossession/storage payment, or Trustee, or adequate protection disbursements or failed to maintain insurance, then, on ten-days warning and opportunity to cure, the stay would lift, if there was no cure. There were to be three such opportunities to cure and the stay thereafter would automatically lift upon GMAC filing a certificate of default.

Debtor's attorneys regarded the proposed order as an overreaching attempt by GMAC[5] to hold the Automobile hostage to allegedly

---

**1.** The automatic stay portion of the motion was a contested matter. Federal Rule of Bankruptcy Procedure 9014. Any possible contention that the turnover portion of the motion should have been filed as an adversary has been waived. *In re Pluta,* 200 B.R. 740 (Bankr.D.Mass.1996); *In re Richardson,* 135 B.R. 256 (Bankr.E.D.Tex. 1992).

**2.** 28 U.S.C. § 1334.

**3.** 28 U.S.C. § 157(b)(2)(A), (E), (M), and (O).

**4.** In this connection, *see Green Tree Financial Servicing Corp. v. Smithwick,* 121 F.3d 211 (5th Cir.1997).

**5.** Debtor's attorneys contend such GMAC tactics violated § 362(a)(3) of the Bankruptcy Code because such acts allegedly constituted GMAC's "exercise [of] control over property of the estate," under § 362(a)(3), thereby subjecting GMAC to damages under § 362(h) for willful violation of the stay.

unfairly negotiate a full plan when the case was in its infancy. In its last correspondence, GMAC indicated a willingness "to work out an agreed order."

Debtor's attorneys seek approximately $4,400 in attorney fees and costs, under § 362(h), for prosecution of this matter, plus rental expense of Debtor's rental of a replacement vehicle. Approximately $2,500 of such fee was attributable to research. An original and supplemental brief was furnished by Debtor's counsel.

A relatively routine fact scenario has become a "cause celebre."

At the hearing on April 28, 1998, GMAC was ordered to turnover the Automobile within twenty-four hours, Debtor was ordered to pay off the repossession and storage charges of $364.40 at $100 per month beginning May 6, 1998, and monthly thereafter until paid in full, and Debtor was ordered to keep current insurance in effect, and it was further ruled that the balance of the matter would be addressed by further findings and conclusions, which are those contained herein.

### Discussion

There are numerous cases addressing this specific issue. The case of *GMAC v. Ryan*, 183 B.R. 288 (M.D.Fla.1995), focuses the issue: "There is no argument, however, of the right of the creditor to protection. The question here is who has the duty to seek that protection." *Id.* at 289. *See* § 363(e).

There is a split of authority on this issue. Both sides of the dispute have relied upon *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

In *In re Sharon*, 200 B.R. 181 (Bankr. S.D.Ohio 1996), a Chapter 13 case, the court discusses the interplay between §§ 362, 363 and 542(a).

The critical language under scrutiny for purposes of the present analysis is found in § 362(a)(3). Once a bankruptcy petition has been filed, § 362(a)(3) prohibits a creditor from taking "any act to obtain possession of property of the estate or of property from the estate *or to exercise control over property of the estate.*" 11 U.S.C.

§ 362(a)(3) (emphasis supplied). This clause was added as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984 (the "1984 Amendments") to the then existing language of § 362(a)(3) which stayed "any act to obtain possession of property of the estate or of property from the estate." The amendment was designed to broaden the scope of the stay. Collier's Bankr.Manual, ¶ 362.03 at 361–19, 362–20 (3rd Ed.1989). The 1984 Amendments expanded the proscription of § 362(a)(3) to encompass acts which "exercise control" over property of the estate in addition to affirmative acts to "obtain possession" of such property.

This court holds that the phrase "exercise control" encompasses acts of a creditor in denying a chapter 13 debtor possession and use of a debtor's vehicle when the return of the property has been requested. As the phrase implies, actual possession consists of the exercise of dominion or control over property. See *In re Knaus*, 889 F.2d 773 (8th Cir.1989); *Carr v. Security Savings & Loan Association*, 130 B.R. 434 (D.N.J.1991); *In re Dungey*, 99 B.R. 814 (Bankr.S.D.Ohio 1989). It is uncontroverted that in this case TranSouth exercised control over the Vehicle and denied the Debtor possession and use of estate property when it repeatedly refused to return the Vehicle.

\*     \*     \*     \*     \*     \*

To demonstrate how Congress could have provided a specific requirement compelling a debtor, rather than a creditor, to take affirmative action and file the first pleading, see § 363(c)(2)[7] which governs the use of cash collateral and requires the debtor, rather than the creditor, to initiate a proceeding to obtain an order from the bankruptcy court.

Pursuant to § 363(e), an entity with an interest in the property used by the trustee or the debtor may request the court to prohibit or condition such use as is necessary to provide adequate protection of such interest. But in the absence of such a request, the debtor is free to use property of the estate (except cash collateral) with-

out obtaining a court order and, certainly, without obtaining a creditor's permission. In enacting the Code, Congress chose to place the burden on the entity with an interest in the property to take affirmative action to restrict a debtor's use of property of the estate. This placement of an affirmative duty on the creditor, rather than the debtor, is consistent with the interpretation of § 362(a)(3) adopted by this court.

Like § 363, § 542(a) [8] titled "Turnover of property to the estate" requires no preliminary action on the part of the debtor. The statute contains no provision requiring adequate protection as a prerequisite to turnover. Under § 542(a), an entity in possession, custody or control of property that the debtor or the trustee may use, sell or lease under § 363 "shall" deliver such property to the trustee unless such property is of inconsequential value or benefit to the estate. 11 U.S.C. § 542(a).

---

7. 11 U.S.C. § 363(c)(2) provides:

The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

8. 11 U.S.C. § 542(a) provides:

Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

---

\* \* \* \* \* \*

This court suggests that the analysis of *Whiting Pools* employed by the majority line of cases is appropriate in connection with automatic stay and adequate protection issues and consistent with this court's interpretation of § 362(a)(3). It should be noted that *Whiting Pools* involved a § 542 turnover analysis, and not a § 362 automatic stay analysis and the Court did not hold that a secured creditor's determination of adequate protection is a prerequisite to turnover.

A critical fact in *Whiting Pools* is that the IRS moved for relief from stay before the debtor moved for turnover pursuant to § 542. Any prerequisite to turnover was determined by the *bankruptcy court*, not the creditor, and only *after* the court made a determination that the seized property was property of the estate and refused to lift the stay. . . .

The determinative distinction between the factual scenario in *Whiting Pools* and the factual scenario presently before this court cannot be overemphasized. In the case before this court, the creditor (TranSouth) made its own determination that either the stay did not apply to it or that it, not the court, would determine adequate protection. The former scenario, employed by the IRS in *Whiting*, is contemplated by the structure of the Code. The latter scenario, employed by TranSouth, violates the provisions of the Code and its policy of preventing any creditor from becoming a self-determining arbiter of what constitutes property of the estate and what actions are permitted or prohibited by the stay. See *Matter of Hughes–Bechtol, Inc.,* 117 B.R. 890, 905 (Bankr.S.D.Ohio 1990), citing *In re Smith,* 876 F.2d 524, 525–26 (6th Cir.1989) and Matter of Brock, 58 B.R. 797, 804 (Bankr.S.D.Ohio 1986). This court finds that TranSouth willfully violated the automatic stay.

*Id.* at 187–189, 193. (footnote 6 omitted)

In *In re Colortran, Inc.,* 210 B.R. 823, 827–828 (9th Cir. BAP 1997), the court points out that: "If the creditor is concerned that its interest will be irreparably harmed if the property is turned over before the motion for relief from stay can be heard, it may request an emergency hearing under § 362(f)." *Also see, In re Belcher,* 189 B.R. 16 (Bankr. S.D.Fla.1995) (this was an innocent vehicle repossession post-petition). The court suggested that the creditor is entitled to a reasonable time of four to five days to respond, under the facts and circumstances of such case. To the same effect, *see In re Brooks,* 207 B.R. 738 (Bankr.N.D.Fla.1997).

For other cases supporting this general approach, *see, GMAC v. Ryan,* 183 B.R. 288;

*Knaus v. Concordia Lumber Co., Inc.,* 889 F.2d 773 (8th Cir.1989); *In re Abrams,* 127 B.R. 239 (9th Cir. BAP 1991). *See also, In re Elliott,* 214 B.R. 148 (6th Cir. BAP 1997); *In re Pluta,* 200 B.R. 740, *Matter of Clark,* 207 B.R. 559, 565 (Bankr.S.D.Ohio 1997); In *Carr v. Security Savings & Loan Assn.,* 130 B.R. 434 (D.N.J.1991), the court discussed the number of exceptions to the stay under § 362(b) and declined to expand them to cover a situation such as a vehicle repossessed prepetition.

The *Sharon* court (200 B.R. 181) explains its reasoning for disagreeing with *In re Young,* 193 B.R. 620 (Bankr.D.D.C.1996). The *Young* court, 193 B.R. at 624, found the § 362(a)(3) phrase "to exercise control" ambiguous, and, citing Webster's Dictionary definition of "exercise," to wit, "to bring into play: make effective in action ...: bring to bear: EXERT ....," holds that exercising control means more "than the passive act of simply continuing to possess it" and the *Sharon* court, 200 B.R. at 190–191, states: "The 1983 *Whiting Pools* decision obviously preceded the 1984 Amendments and therefore could not, and does not, contain an analysis of the 'exercise control' language."

Specifically disagreeing with the *Sharon* court reasoning along the same general grounds as *In re Young,* 193 B.R. 620, *see, In re Quality Health Care,* 215 B.R. 543, 572, 578 (Bankr.N.D.Ind.1997), and *In re Massey,* 210 B.R. 693, 696 (Bankr.D.Md.1997).

The *In re Quality Health Care* court, by analogy, cites to *Citizens Bank of Md. v. Strumpf,* 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995), as further support for its position. *In re Quality Health Care,* 215 B.R. at 577. In such case, Judge Scalia ruled that, when a bank freezes a deposit account, it has not violated the automatic stay.[6] Judge Scalia held that refusal to turn over was not a setoff. In such case, the creditor filed a motion for relief from the stay within five days of its freeze, and before debtor filed any motion for contempt. Such facts, standing alone, distinguish this case from *Strumpf.* Justice Scalia further states:

Finally, we are unpersuaded by respondent's additional contentions that the administrative hold violated §§ 362(a)(3) and 362(a)(6). Under these sections, a bankruptcy filing automatically stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," 11 U.S.C. § 362(a)(3), and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title," § 362(a)(6). Respondent's reliance on these provisions rests on the false premise that petitioner's administrative hold took something from respondent, or exercised dominion over property that belonged to respondent. That view of things might be arguable if a bank account consisted of money belonging to the depositor and held by the bank. In fact, however, it consists of nothing more or less than a promise to pay, from the bank to the depositor....

*Citizens Bank of Md. v. Strumpf,* 516 U.S. at 21, 116 S.Ct. 286. This passage "suggests that debts owed to the debtor are distinguishable from tangible property held by the bank." *In re Quality Health Care,* 215 B.R. at 579. Justice Scalia further states:

Section 542(b) of the Code, which concerns turnover of property to the estate, requires a bankrupt's debtors to "pay" to the trustee (or on his order) any "debt that is property of the estate and that is matured, payable on demand, or payable on order ... *except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.*" 11 U.S.C. § 542(b) (emphasis added). Section 553(a), in turn, sets forth a general rule, with certain exceptions, that any right of setoff that a creditor possessed prior to the debtor's filing for bankruptcy is not affected by the Bankruptcy Code. It would be an odd construction of § 362(a)(7) that required a creditor with a right of setoff to do immediately that which § 542(b) specifically excuses it from

---

**6.** In the case of *In re Richardson,* decided prior to *Strumpf,* the court, in a widely-cited opinion, held that on a vehicle repossessed pre-petition

"the effect of this stay is to freeze the status quo." 135 B.R. at 258.

doing as a general matter: pay a claim to which a defense of setoff applies.

*Strumpf,* 516 U.S. at 20, 116 S.Ct. 286.

It appears that the facts and legal considerations of *Strumpf* are distinguishable from the Automobile repossessed by GMAC pre-petition in this case, and that the Court's reasoning in *In re Sharon,* 200 B.R. 181, is applicable.

### *When Was Any Stay Violation, If Any?*

■ It appears that GMAC was permitted a reasonable time to respond. *In re Colortran, Inc.,* 210 B.R. at 827–828; *In re Belcher,* 189 B.R. 16; *In re Brooks,* 207 B.R. at 741.

As indicated, Debtor rented the replacement vehicle at $180 per week on April 12, 1998, and filed bankruptcy on April 15, 1998, and notified GMAC then. Negotiations did not break down until April 21–22, 1998, and the hearing was on April 28, 1998. GMAC's response was filed April 27, 1998 at 4:08 p.m.

■ Under the facts and circumstances of this case, the stay violation occurred on April 21–22, 1998 and up through the April 28, 1998 hearing. The court, in *In re Sharon,* stated:

### E. DAMAGES

An individual injured by a willful violation of the automatic stay is entitled to recover actual damages, including costs and attorney fees, and, in appropriate circumstances, punitive damages. 11 U.S.C. § 362(h). In construing the provisions of § 362(h), courts have held that a "willful violation" does not require a specific intent to violate the automatic stay. *In re Atlantic Business & Community Corp.,* 901 F.2d 325, 329 (3d Cir.1990); *In re Bloom,* 875 F.2d 224, 227 (9th Cir.1989). Rather, § 362(h) provides for damages upon a finding that the party knew of the automatic stay and that the party's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to property is not relevant to whether the act was "willful" or whether

compensation must be awarded. *Bloom,* 875 F.2d at 227 (citations omitted).

200 B.R. at 200. GMAC knew of the automatic stay and its refusal to turn over the Automobile during the period April 21, 1998, up to the hearing on April 28, 1998, was intentional. Under § 362(h), Debtor is entitled to recover actual damages, including costs and reasonable attorney fees as determined by the court. The facts and circumstances of this case do not rise to the level justifying imposition of punitive damages.

Debtor is entitled to recover $180 for car rental for the period April 21, 1998 through April 28, 1998.

The April 28, 1998 hearing, with the Debtor and his attorney testifying and arguing, took forty-five minutes. Prior to such time, Debtor's attorney:

1. notified GMAC of the bankruptcy filing;

2. negotiated with GMAC and sent two letters;

3. did research;

4. drafted a motion and two briefs and assembled exhibits for the hearing;

5. prepared a Local Bankruptcy Rule 9014 witness and exhibit list; and

6. prepared for and attended the hearing representing the Debtor.

A reasonable fee for such services is $1,400.[7]

Judgment will be entered in accordance with such opinion.

---

**7.** It appears that Debtor's attorneys, in all likelihood, spent the amount of time testified to, but that approximately eight hours reasonable attorney time at $175 per hour would have accomplished effective relief for this Debtor.