In re METROMEDIA FIBER
NETWORK, INC., et al.,
Debtor.

Metromedia Fiber Network
Services, Plaintiff,

v.

Lexent, Inc., Hugh O'Kane Electric
Co., LLC, and National Network
Technologies, LLC, Defendants.

Bankruptcy Nos. 02–22736 (ASH) to 02–
22742(ASH), 02–22744(ASH) to 02–
22746(ASH), 02–22749(ASH), 02–
22751(ASH) to 02–22754(ASH).
Adversary No. 02–05297A.

United States Bankruptcy Court,
S.D. New York.

Feb. 13, 2003.

Kronish Lieb Weiner & Hellman LLP, By Richard S. Kanowitz, Esq., Gregory G. Plotko, Esq., New York City, for Debtors/Plaintiff.

Ravin Greenberg PC, By Howard S. Greenberg, Esq., Chad Friedman, Esq., Roseland, NJ, for Defendants.

### DECISION ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

ADLAI S. HARDIN, Jr., Bankruptcy Judge.

In this adversary proceeding debtor-plaintiff Metromedia Fiber Network Services, Inc. ("MFNS" or "debtor") seeks (among other relief) turnover under 11 U.S.C. § 542(a) of certain property (the "Equipment") currently in defendants' possession which is property of the debtor's estate and sanctions for violation of the automatic stay under 11 U.S.C. § 362(a)(3).

Defendants acknowledge lawful possession of, and assert a security interest in, the Equipment. It is defendants' position that they need not relinquish possession of the Equipment to MFNS unless and until the debtor provides adequate protection for defendants' security interest under 11 U.S.C. § 363(e).

As amplified below, MFNS is entitled to immediate turnover of the Equipment under Section 542(a). Failure to comply with Section 542(a) violates the automatic stay under Section 362(a)(3). Defendants have not moved for relief from the automatic stay under Section 363(f) nor argued that turnover before provision of adequate protection poses any risk of irreparable injury.

### Jurisdiction

This Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b).

### Background

MFNS and its debtor and non-debtor affiliated companies provide fiber optic infrastructure, high bandwidth internet connectivity and managed internet infrastructure services for its communications-intensive customers.

The complaint alleges that defendants and MFNS were parties to an agreement whereby defendants installed fiber optic cables for MFNS in the New York City area. The Equipment here in dispute, including several reels of cable and fiber, is alleged to be worth more than $1,450,000. The Equipment, purchased by MFNS for the purpose of such installation by defendants, was given to defendants to store at various of defendants' locations in the New York City area for the convenience of both parties.

The particulars of the parties' contractual arrangements and obligations are not germane to the outcome of these motions. Suffice it to say that MFNS acknowledges that under a "Modification Agreement" certain deferred payment obligations of $2,659,963 owed by MFNS to defendants "shall be secured with a second security interest ... in assets engineered, constructed, installed, acquired, leased, developed or improved by Defendants in performing the work for which the deferred payments are owed." (Complaint ¶ 18) The defendants claim that the Equipment is included within the "assets" subject to the second security interest. MFNS de-

nies that the Equipment is part of the collateral subject to defendants' second security interest.

But MFNS argues that defendants' alleged secured position in the Equipment is immaterial, because the requirement of prompt turnover under Section 542(a) exists irrespective of the alleged security interest. In addition, MFNS argues that defendants' refusal to turn over the Equipment constitutes a violation of the automatic stay under Section 362(a)(3) of the Bankruptcy Code. Finally, MFNS argues that defendants' right to move for adequate protection under Section 362(e) does not relieve defendants of the obligation to promptly turn over property of the debtor's estate and that MFNS is entitled to sanctions for the cost of having to bring this adversary proceeding.

Defendants counter that, although there is a split of authority, the better reasoned decisions hold, in substance, that Section 542 must give way to Section 363(e) and that a secured party need not turn over possession of its collateral until the debtor has provided adequate protection, either voluntarily or pursuant to court order. Moreover, defendants deny that mere retention of possession of the debtor's property (*i.e.*, maintenance of the status quo) violates the automatic stay provided under any of the subdivisions of Section 362(a).

### *Discussion*
#### *Turnover under Section 542*

Section 542, entitled "**Turnover of property to the estate**", provides in subsection (a), in relevant part: "... an entity ... in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title ... *shall* deliver to the trustee ... such property ..." (emphasis supplied).[1]

The statute on its face is clear and unambiguous, and it mandates that a party holding property of the debtor's estate "shall" deliver the property to the debtor or trustee. No exception is made in the statute for property in which the party-in-possession holds a security interest.

Not surprisingly, the case law holds that even a secured party must turn over possession of property of the debtor's estate. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 202–208, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) (in affirming the Second Circuit's decision holding that a turnover order could issue against the Internal Revenue Service under Section 542(a), the Supreme Court determined that the Bankruptcy Code generally authorizes the turnover of a debtor's property seized by a secured creditor prior to the commencement of reorganization proceedings); *Carr v. Security Savings & Loan Association*, 130 B.R. 434, 436 (D.N.J.1991) ("A secured creditor who is in possession of repossessed collateral in which a debtor in bankruptcy has an interest is required to turn the collateral over to the debtor's trustee upon the filing of the bankruptcy petition") (citing *Matter of M. Frenville, Co., Inc.*, 744 F.2d 332 (3d Cir.1984)); *In re Sharon*, 200 B.R. 181, 187 (Bankr.S.D.Ohio 1996), *aff'd*, 234 B.R. 676 (6th Cir. BAP 1999) (court determined that secured creditor "who has lawfully seized a vehicle prepetition, but refuses to turn over the vehicle

---

1. Section 542(a) provides, in full:
   (a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

upon a chapter 13 debtor's postpetition demand, violates the automatic stay.").

### Automatic stay under Section 362(a)(3)

■ Section 362(a) provides in subsection (3) in relevant part that the filing of a petition operates as a stay of "any act . . . to exercise control over property of the estate. . . ."

This Court agrees with those decisions holding that refusal to turn over property of a debtor's estate to the debtor upon demand constitutes an "exercise of control" over the debtor's property within the scope of Section 362(a)(3). *See In re Knaus*, 889 F.2d 773, 775 (8th Cir.1989) ("The failure to [turn over], regardless of whether the original seizure was lawful, constitutes a prohibited attempt to 'exercise control over the property of the estate' in violation of the automatic stay."); *In re Sharon*, 200 B.R. at 187–88 ("This court holds that the phrase 'exercise control' encompasses acts of a creditor in denying a chapter 13 debtor possession and use of a debtor's vehicle when the return of the property has been requested. As the phrase implies, actual possession consists of the exercise of dominion or control over property." (citations omitted)); *Foust v. Seal (In re Foust)*, 2000 WL 33769159, *6, 2000 Bankr.LEXIS 1146 *18–19 (Bankr.S.D.Miss. July 18, 2000) ("This court agrees with other courts that have held that postpetition retention of estate property without court authority following a prepetition seizure constitutes an exercise of control over property of the estate and is a violation of the automatic stay"); *In re Zaber*, 223 B.R. 102 (Bankr.N.D.Tex. 1998) (follows *In re Sharon*); 3 COLLIER ON BANKRUPTCY ¶ 362.03[5], at 362–20 (Lawrence P. King et. al eds., 15th ed. rev.) ("Section 362(a)(3) stays all actions, wheth-

er judicial or private, that seek to obtain possession of property of the estate or of property from the estate to exercise control over property of the estate. (footnote omitted) . . . This requires that no entity seek to interfere . . . by taking possession of or exercising control over property of the estate."). *See also, General Motors Acceptance Corp. v. Ryan*, 183 B.R. 288, 289 (M.D.Fla.1995) ("A creditor's failure to voluntarily turn over property taken lawfully prepetition, when so requested by the debtor postpetition, is a violation of the automatic stay."); *Brooks v. World Omni (In re Brooks)*, 207 B.R. 738, 742 (Bankr. N.D.Fla.1997) ("This court finds that a willful violation occurred—not when the vehicle was originally repossessed [prepetition]—but when, after defendant had knowledge of the bankruptcy, the vehicle was not returned to the debtors' possession where it was repossessed but, instead, was made available for the debtors' retrieval."); *Carr v. Security Savings & Loan Association*, 130 B.R. 434, 438 (D.N.J.1991) ("[The secured creditor's] failure to turn over debtor's car upon the filing of debtor's bankruptcy petition constituted a violation of the automatic stay.").

For a contrary view, *see In re Young*, 193 B.R. 620 (Bankr.D.D.C.1996); *In re Massey*, 210 B.R. 693 (Bankr.D.Md.1997); *In re Deiss*, 166 B.R. 92 (Bankr.S.D.Tex. 1994).

### Adequate protection under Section 363(e)

Section 363 deals with the debtor's rights and obligations with respect to property of the estate. Section 363(c)(1) authorizes the debtor to use, sell or lease property of the estate in the ordinary course of business without notice or a hearing.[2] Subsection (b)(1) authorizes the

---

**2.** Section 363(c)(1) provides:

 (c) (1) If the business of the debtor is authorized to be operated under section 721,

1108, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, in-

debtor to use, sell or lease property of the estate other than in the ordinary course of business, but only after notice and a hearing.[3]

However, the debtor's right to use, sell or lease estate property under subsections (b)(1) and (c)(1) of Section 363 is constrained by the protection afforded under subsection (e) to entities holding security interests in the debtor's property. Section 363(e) provides, in pertinent part:

(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, *shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. . . .* (emphasis supplied).

■ Section 363(e) is not permissive or discretionary—it states that the court "shall" grant the relief specified, at any time, on request of the secured entity. *See, In re Heatron, Inc.,* 6 B.R. 493, 494 (Bankr.W.D.Mo.1980) ("Section 363(e) of Title 11, U.S.C. requires the Court, upon 'request of an entity that has an interest in property used' to condition such use so as to provide adequate protection of such interest. Providing adequate protection is mandatory." (citation omitted)); 3 *COLLIER ON BANKRUPTCY* ¶ 363.05[3], at 363–39 (Lawrence P. King et al. eds., 15th ed. rev.) ("[T]he requirement of adequate protection in section 363(e) is mandatory." (footnote omitted)). 3 *NORTON BANKR. L. & PRAC. 2D* § 37:2 ("In the event that the appropriate valuation test applied by the court reveals

that the debtor has insufficient equity in the collateral to cushion the impairment of the requesting entity's interests in the property, the court should select one of two alternatives permitted by subsection (e). The court will either prohibit the use, sale, or lease of the property by the trustee or debtor in possession, or condition the use, sale, or lease upon the trustee or debtor in possession providing adequate protection compatible with one of the mandates in Code § 361." (footnotes omitted)). The relief which must be provided is "adequate protection" for the entity's security interest in the property. And the Court "shall prohibit" the debtor from using, selling or leasing the property if necessary to provide adequate protection. *See,* 11 U.S.C. § 363(e); 3 *COLLIER ON BANKRUPTCY* ¶ 363.05[3], at 363–39 (Lawrence P. King et al. eds., 15th ed. rev.) ("If adequate protection cannot be offered, such use, sale or lease of the collateral must be prohibited.") (footnote omitted). *See also, United States v. Whiting Pools, Inc.,* 462 U.S. 198, 204, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) ("At the secured creditor's insistence, the bankruptcy court must place such limits or conditions on the trustee's power to sell, use, or lease the property as are necessary to protect the creditor. The creditor with a secured interest in property included in the estate must look to this provision [§ 363(e) ] for protection, rather than to the non-bankruptcy remedy of possession."); *Rieser v. Dayton Country Club Co. (In re Magness),* 972 F.2d 689, 697 (6th Cir.1992); ("Section 363(e) of the Code directs that when property is to be sold by the trustee, notwithstanding other provi-

cluding the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

3. Section 363(b)(1) provides:

(b) (1) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

sions of § 363, the court shall prohibit or make conditions necessary to protect other persons having an interest in the property to be sold."); *In re Best Products Co., Inc.*, 138 B.R. 155, 158, *aff'd*, 149 B.R. 346 (S.D.N.Y.1992) ("By making a motion for adequate protection, a secured creditor demonstrates its concern and puts the debtor in a position where it must decide what it should do with collateral. The debtor is given the option to surrender the property to the entity that has made the request, and avoid providing adequate protection or provide adequate protection to such entity for the debtor's continued use of the collateral." (citations omitted)); *Chrysler Credit Corp. v. Ruggiere (In re George Ruggiere Chrysler–Plymouth)*, 727 F.2d 1017, 1019 (11th Cir.1984) ("The principal restraint on use of cash proceeds is found in § 363(e), which specifies that the court shall condition the use of secured property 'as is necessary to provide adequate protection of such interest.' ").

### Turnover without adequate protection?

■ It is evident that there is a potential for conflict in the practical operation of Section 542(a) and Section 363(e), in a situation where a secured party's compliance with Section 542 may result in the loss of the secured party's right to adequate protection under Section 363(e) before the secured party has an opportunity to obtain a court order prohibiting or conditioning the debtor's use, sale or lease of the property.

In most cases the potential conflict between the statutes is more theoretical than real. In this case, for example, the defendants may turn over the Equipment to the debtor and apply to the Court for adequate protection. Whether the adequate protection controversy takes four hours or four weeks or four months to resolve, defendants will be assured of receiving whatever adequate protection they are entitled to even if the debtor promptly disposes of the Equipment, since the debtor has ample cash and other resources. In other cases, however, the conflict between Section 542(a) and Section 363(e) may be quite real. Consider, for example, the case of an impecunious jewel merchant debtor and a creditor with a valid security interest in, and possession of, a valuable diamond owned by the debtor. Prompt turnover of the diamond upon request, without an opportunity to obtain a court order for adequate protection, may result in prompt sale of the diamond by the debtor and dissipation of the proceeds, resulting in the *de facto* denial of the secured creditor's rights under Section 363(e). Similarly, where a secured creditor has exercised its pre-petition right to repossess a vehicle or machine used in the debtor's business or held for sale by the debtor in the ordinary course of its business, prompt turnover followed by use or sale of the property without affording the secured creditor an opportunity to obtain a court order for adequate protection may result in irrevocable damage to or loss of the property and consequent denial of the secured party's rights under Section 363(e).

It cannot be said that the debtor's right to turnover under Section 542(a) clearly overrides the secured creditor's right to adequate protection under Section 363(e), or *vice versa*, on the face of these two provisions. MFNS argues that Section 542(a) is "self executing" in the sense that it is a simple statutory command requiring that property be delivered to the debtor without the necessity of a court order or application, whereas Section 363(e) requires the action of the court to "prohibit or condition" the debtor's use, sale or lease of property upon "request" of the secured creditor. Defendants assert that Section 542(a) is not "self executing" and argue that the statutes should be interpreted to

permit them to retain possession of the Equipment until the debtor provides or the Court orders adequate protection. Moreover, Section 542(a) applies only to "property that the trustee *may* use, sell, or lease under section 363", but Section 363(e) states that the Court "*shall prohibit* or condition *such use, sale, or lease* as is necessary to provide adequate protection." It might be argued that the determination of whether the property in question constitutes "property that the trustee *may* use, sell, or lease under section 363" within the meaning of Section 542(a) cannot be determined until the Court first determines whether it "*shall prohibit* ... such use, sale, or lease" under Section 363(e).

■ However, the issue is put to rest by the automatic stay provision in Section 362(a)(3) prohibiting a secured party-in-possession from exercising control over the debtor's property. The practical effect of this provision is that the secured creditor must deliver the property to the debtor to avoid violating Section 362(a)(3). The automatic stay most certainly is "self executing" in the sense that it must be complied with absent any action by the debtor or the court, at the risk of sanctions for violation.[4]

But the secured creditor in possession of debtor property is not left without protection in the face of the debtor's demand for turnover under Section 542(a). In a case of manifest danger of loss if the property is turned over without a court order for adequate protection, the secured creditor may protect itself against loss and a charge of violating the automatic stay by timely moving (by order to show cause, if necessary) for relief from the stay under Section 362(f).[5]

## *Conclusion*

Defendants were obligated under Section 542(a) to deliver the Equipment to the debtor upon the debtor's demand for possession. Defendants' refusal to comply with the statute, necessitating commencement of this adversary proceeding, constituted an exercise of control over the debtor's property in violation of the automatic stay under Section 362(a)(3).

■ In many, if not most, cases a violation of the automatic stay would constitute grounds for an award of sanctions. In the circumstances here present, a strong argument may be made that the debtor's estate should not be required to bear the cost of this unnecessary and improvident adversary proceeding. Defendants did not exercise their right to apply to the Court for relief under Section 362(f), have made no showing of potential irreparable injury if the Equipment is turned over to the debtor before the debtor provides adequate protection, and did not even file a motion or request of the Court to prohibit or condition the debtor's use, sale or lease of the Equipment or to determine the adequate protection to which defendants are entitled under Section 363(e).[6] Nevertheless, there is minority authority in support of defendants' position, and it appears that

---

**4.** This Court does not agree with the analyses or the results in *In re Young, supra,* relied upon by defendants.

**5.** Section 362(f) provides:
(f) Upon request of a party in interest, the court, with or without a hearing, shall grant such relief from the stay provided under subsection (a) of this section as is necessary to prevent irreparable damage to the interest of an entity in property, if such interest will suffer such damage before there is an opportunity for notice and a hearing under subsection (d) or (e) of this section.

**6.** Defendants asserted for the first time in court their rights under Section 363(e) in their answer as a counterclaim in this adversary proceeding.

there may have been some intransigence on the part of both sides in the relations between the parties that led to the filing of this adversary proceeding. Accordingly, I have concluded that sanctions would be inappropriate here.

On or before 12:00 Noon February 19, 2003 debtor's counsel shall submit an order disposing of the cross-motions consistent with this decision. Counsel in this adversary proceeding are required to attend a conference with the Court on February 20, 2003 at 11:00 A.M. to consider further proceedings to resolve all remaining issues between the parties.